JOHN S. HARPER, Appellant, v. WM. C. FIDLER, Respondent.

Kansas City Court of Appeals, February 15, 1904.

1. PRINCIPAL AND AGENT: Dual Agency: Public Policy: Middleman.   Where a double employment of an agent exists and is unknown to either party no recovery can be had against such party on a contract effected by such agent though there be neither designed duplicity nor fraud, but it is the consequence of an established public policy; and on the facts in this case there is no application of the rule relating to a mere middleman.

2. **CONTRACT: Rescission: Dual Agency: Evidence.** On the pleading and evidence an instruction submitting to the jury the issue of rescission of contract effected by dual agency was justified.

3. **PRINCIPAL AND AGENT: Definition: Instruction.** The term agent in an instruction need not be defined since it is readily understood by a jury of usual intelligence.

4. **TRIAL PRACTICE: Pleading: Inconsistent Defenses: Instruction.** If defenses are inconsistent the plaintiff should move to strike them out of the answer but failing in that he can not raise the question by an instruction.

Appeal from Vernon Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*M. T. January* for appellant.

(1) Where the acts and admissions of a party clearly show that he did not rely upon the representations of the other party, he is not entitled to the finding of a jury on his own testimony that he did so rely. State v. Nelson, 118 Mo. 124; State v. Hamilton, 171 Mo. 377. (2) The fourth count of defendant's answer does not constitute a defense to this action and defendant's instruction No. 3 based thereon is erroneous. 45 L. R. A. 51, note, "middlemen." (3) The term "agent" in this action is a legal conclusion, and it was improper to require the jury to define it as was done in instruction No. 3. Cockrell v. McIntire, 151 Mo. 59; Rowen v. Railway, 82 Mo. App. 24; Dyer v. Brannock, 2 Mo. App. 432. (4) An instruction should not be given unless there is evidence on which to base it. Such is the vice in defendant's instruction No. 2. Marr v. Bunker, 92 Mo. App. 651. (5) Defendant's instruction No. 1 is erroneous, there being no evidence that the land was represented as "smooth and unbroken," and the materiality of each representation being assumed. Marr v. Bunker, 92 Mo. App. 651. (6) Defendant waived the

the defense of mutual rescission and also the defense of double agency by his admission in the trial that his only reason for refusing to carry out the contract was on account of the misrepresentation of the 160 acre farm. Plaintiff's refused instruction No. 4 should have been given.

*Scott & Bowker* for respondent.

(1) If one makes a material misrepresentation, knowing it is not true, or makes a material statement as true, without knowing whether it is true or false, and it turns out to be false, and the other party relies upon it, and is thereby induced to trade, he is guilty of a fraud upon that party. And this rule applies of course, if the false statements are made by the agent. Chase v. Rusk, 90 Mo. App. 25; Cahn v. Reid, 18 Mo. App. 127; (2) Where a party by his instructions in effect, admits that there is sufficient evidence to submit the issue to the jury, he can not on appeal shift his position and claim the contrary. Hopkins v. M. W. of A., 94 Mo. App. 402; Mercantile Co. v. Burrell Sisters, 66 Mo. App. 117; James v. Hicks, 76 Mo. App. 108; Seiter v. Bischoff, 63 Mo. App. 157. (3) Where there is any evidence to support the verdict of the jury, the appellate court can not set it aside. Tower v. Pauley, 76 Mo. App. 287; Taylor v. Short, 38 Mo. App. 21; James v. Life Association, 148 Mo. 1. (4) If an agent is working for an adverse party without the knowledge or consent of his principal, it is good ground for the rescission of the contract, on the ground that it is against public policy. Dee Steiger v. Hollington, 17 Mo. App. 382; Atlee v. Fink, 75 Mo. 100; Insurance Co. v. Insurance Co., 8 Mo. 408; 2 Warvelle on Vendors (2 Ed.), 1004, section 852; MacDonald v. Wagner, 5 Mo. App. 56; Mechem on Agency, page 654, sections 796 and 798; Story on Agency (4 Ed.), section

210. (5) The above rule applies although the parties bargained for themselves; they are entitled to the benefit of the skill, knowledge and advice of the agent. Chapman v. Currie, 51 Mo. App. 44.. (6) The only qualification to the above rule in this State is where the principal knew of the double agency and consented to the same. Chapman v. Currie, 51 Mo. App. 40; Dee Steiger v. Hollington, 17 Mo. App. 382; Rosenthal v. Drake, 82 Mo. App. 358. (7) The courts of this State have never recognized any distinction between real estate brokers in general and mere middlemen. The rule of double agency applies to both with equal force. Dee Steiger v. Hollington, 17 Mo. App. 382; Norman v. Roseman, 59 Mo. App. 682; Rosenthal v. Drake, 82 Mo. App. 358; Chapman v. Currie, 51 Mo. App. 40; Reese v. Garth, 36 Mo. App. 641. (8) In those states where the rule of double agency does not apply to mere middlemen, they hold that the middleman must be absolutely disinterested. Leathers v. Canfield, 45 L. R. A. 33, and cases cited in notes. (9) A rescission of a written contract may be by parol, and may be inferred from the acts and the declarations of the parties. Choteau v. Iron Works, 94 Mo. 388; Fine v. Rogers, 15 Mo. 315.

SMITH, P. J.—The plaintiff was the owner of two tracts of land, one of which contained 200 acres and and the other 160. The defendant was the owner of a stock of clothing, boots and shoes in the city of Nevada which, owing to ill health, he desired to dispose of and go out of the mercantile business. One, Kolb, lived on the same street with plaintiff and was his neighbor and acquaintance. The former had for many years previously to the transaction to which we shall presently refer been in the employment of the plaintiff and his father who were engaged in the coal and seed business.

Early in October, 1902, the defendant employed

Kolb to trade or sell his stock of merchandise for a certain commission. Two or three days after his employment Kolb came into defendant's store and handed him a typewritten description of the two tracts of land owned by plaintiff. The 200 acre tract was described as an "ideal combination farm, altogether one of the nicest country homes on the earth;" and the other—the 160 acre tract—"about 100 acres in cultivation, balance good timber, soil good, needs building up. Lays beautiful, not more than five acres waste land in place," etc. These descriptions were written by plaintiff and given to Kolb for defendant. Kolb arranged for a meeting of the plaintiff and defendant at the store of the latter. They accordingly met and the negotiations for the exchange of the store for the land were commenced. After the defendant had seen the description of the land and had heard and considered the representations of both plaintiff and Kolb, he signified an intention to make the exchange if after seeing the land he was satisfied with it. It was arranged that he should go out on the following day and examine it but when the day arrived he felt so ill that he concluded not to go and advised Kolb of the fact, telling him that he "guessed the trade was off." Kolb replied that, "you —defendant—are missing the bargain of your life.
. . As a neighbor and a friend, Mr. Fidler, I can state to you that the land is worth every dollar Mr. Harper is asking for it—and it is a bargain to you.
. . You had better go right down and close up this trade with John (meaning plaintiff). He is notionate —he is giving you a good trade and my advice to you as a neighbor is, to go down and close it up. The land is worth the amount. . . I am acting as your agent and do that honest."

The defendant did not go out to see the land but two days later on he concluded to trade with plaintiff and a written contract was prepared and signed by

both under which it was agreed that plaintiff would take defendant's stock of merchandise at the "wholesale market price," and for which he was to convey the 200 acre tract of land at $35 per acre and the 160 acre tract at $15 per acre, defendant assuming the $4100 incumbrances thereon.

A future day was fixed for taking an invoice of the stock. In the meanwhile the defendant went and inspected the lands. He was well enough satisfied with the 200 acre tract but with the other he was not, for, as he testified, "I got out and went upon the ridge where the hedge fence was—the soil is black around it but then it dips down like a lake and the soil is all taken off of it (the land) and a ridge and furrows all in it. I walked in and it covered me up to my arm pits where the water had washed or made great ditches and there was trees growing up in what was supposed to be cultivating land; there were sprouts and small timber and some large timber also in the field. There was 12 to 14 acres that had been planted that season. Eighty acres had been in cultivation. There was not any soil practically; that is, growing soil at all. The timber had been chopped—culled—12 or 15 acres of it was waste land."

On the day the invoice was to be taken the defendant entered the store and calling plaintiff to one side said to him: "Mr. Harper, who is Kolb representing, you or me?" to which query plaintiff replied: "He is representing both of us." Thereupon the defendant said: "You both misrepresented this property to me—this farm lying south of town, and I am not going to trade." The defendant testified further that the plaintiff responded: "Well, you misrepresented your old goods to me, and I am not going to trade, either." The trade fell through. The plaintiff shortly afterwards tendered defendant warranty deeds for the land and demanded possession of the stock of merchandise.

The defendant repudiated the contract. The plaintiff brought this action to recover damages for breach of the said contract claiming that he had been prevented from realizing a profit on the sale of the land, etc.

The answer alleged (1), that the plaintiff had represented to the defendant that 100 acres of the 160 acre tract was in cultivation and that the remainder was in good timber; that the tract was smooth and unbroken —not 5 acres of waste land in the entire tract; that said land was worth $15 per acre, etc.; that defendant relied upon said representations so made by plaintiff and believed them to be true and was so induced to execute said contract sued on; that said alleged representations were untrue and false, and that plaintiff knew they were untrue and false at the time he made them to defendant, but made them for the purpose of cheating and defrauding defendant; and (2) that after said written contract was signed and after defendant had ascertained that said land was not as represented by plaintiff; and that said Kolb, his agent, was also secretly acting as agent of plaintiff, that plaintiff and defendant mutually agreed to rescind said contract; and (3), that plaintiff employed said Kolb as his agent to find a purchaser for his stock of merchandise and that said Kolb brought about said sale between plaintiff and defendant, and that during all of the negotiations up to and including the signing of the contract, the said Kolb was acting as agent of defendant in said matter and until after the said contract was entered into and without the knowledge or consent of the defendant, the said Kolb was secretly acting as the agent of plaintiff.

There was a trial which resulted in judgment for the defendant, and to reverse which this appeal was prosecuted.

Several questions are raised by the appeal but that decisive of the case is as to whether or not the trial court erred in its action giving the defendant's third instruc-

tion submitting the defense of dual agency, which was pleaded by the answer. This defense was amply supported by the evidence. Both plaintiff and Kolb testified that the latter in his capacity as real estate agent had the former's lands on his list for sale and had shown one of the tracts to one or more persons with the view of making a sale to them prior to the time of the trade between plaintiff and defendant. It was conceded that shortly after the commencement of negotiations between plaintiff and defendant the former employed Kolb in his business at a hundred dollars per month and that he was so in plaintiff's employ at the time the contract was entered into. There was testimony further showing that during the progress of the negotiations Kolb told Janes, an auctioneer, in confidence that "If I make this deal why I will get a commission out of John (plaintiff) and Fidler, both . . . I don't want you to say anything to prevent the trade. We will let you auction off the stock." Janes had been engaged twice a week in selling defendant's goods at public auction. On the day set for taking the invoice of defendant's goods, he inquired of plaintiff whom Kolb was representing in the negotiations which led up to the trade and the latter replied "both of us."

It is thus made obvious that Kolb in conducting the negotiations between plaintiff and defendant acted for both of them—in a dual capacity. The defendant testified that he did not know until after the contract was signed that Kolb was acting for anybody else excepting himself in the trade. In Huggins Candy Co. v. Peoples' Ins. Co., 41 Mo. App. 1. c. 531 et seq., it was said by us: "The law which commands what is right and prohibits what is wrong we think does not tolerate an agency of this kind. It has laid the rigorous hand of its iron interdict upon such an agency. . . . The authoritative declaration that no man can serve two masters has reached us sanctioned by the experience of

ages. . . . . The cases are nearly if not quite uniform, where the double employment exists and is not known that no recovery can be had against the party kept in ignorance, and the result is not made to turn on the presence or absence of designed duplicity or fraud, but is a consequence of established policy. . . . The antagonism which exists between the opposite parties to a bargain is generally recognized by law. Each acts and has a right to act with a view to his own interest and they deal at arms' length. Accordingly if one acts by an agent, that agent should be not nominally but really in place of the principal with his self interest undisturbed by calculations as to the interest of the opposing party. This, as well as the exercise of the best skill and judgment of his agent as to the contingencies of the bargain, the principal has the right to demand. Accordingly a contrivance which reduces the two parties to one and admits an agent representing antagonistic interests to make a bargain by himself is so far against the policy of the law that the contract is held void. . . . Such bargains are constructively fraudulent. . . . It is not necessary for a party seeking to avoid such a contract to show that any improper advantage has been gained over him—it is at his option to repudiate or affirm the contract, irrespective of the proof of actual fraud.'' All the cases in this State, the most of which are cited in the briefs of counsel, are to the same effect.

But the plaintiff insists that the rule just adverted to has no application to mere ''middlemen,'' citing in support of his insistence, 45 L. R. A. 51, and that Kolb is shown by the evidence to fall within that category. See Story on Agency, section 31 (note 2). But even if this exception obtains in this State, it can have no application to a case where the character of the agency is like that shown in this case.

The defendant was a comparative stranger in the

State only having been a resident of it for a few months before the trade. Kolb was his neighbor and acquaintance to whom he looked for advice and by whose opinions and judgment he seems to have been greatly influenced. He not only relied on him in his capacity as agent to find some one who would trade lands for his store, but on his judgment as to the quantity and value of such lands. His relation to the defendant was such that he was entitled to his ''best judgment as to the contingencies of the bargain.'' No case can be found whose facts afford a better illustration of the wisdom of the rule than this. It is plain to us that the duties and functions of Kolb far exceeded those of a mere ''middleman,'' and the exception to the rule invoked by plaintiff is without application. Certainly this is not a case where a broker has simply brought the parties together and has had no hand in the negotiations between them, they making their own bargain without his aid or interference, as in the case cited and relied on by plaintiff. In all the ''middlemen'' cases which we have seen, we find they concur in stating that where the middleman has done anything to influence either party to make the sale the contract will not be enforced.

The undisputed facts of this case show that the contract sued on is one that must be condemned by considerations of public policy and can not be upheld. No finding and judgment upholding the contract in the face of the facts pleaded and proved would be permitted to stand.

We do not think the plaintiff was prejudiced by the giving of the defendant's third instruction in which the term ''agent'' is used without a definition of it. It is an English word in common use, the meaning of which is as well understood by any jury of average intelligence as that of ''bargain'' in plaintiff's second

Such words do not ordinarily require a definition in order to be understood by a jury composed of men of usual intelligence. The issue of dual agency having been submitted to the jury on ample evidence to justify it, and under an instruction unexceptionable in expression, the finding in favor of defendant is conclusive as to the entire case.

If the other issues tendered by the answer had not been sustained by the evidence, or if the instructions for the defendant submitting the same had been erroneous, the verdict would still have to stand, because no action to enforce the contract should be maintained. But however this may be, we do not think the court erred in submitting the issue of the rescission of the contract. There was, as we think, evidence justifying the giving of the defendant's second instruction submitting that issue. And the same remark is applicable to the defendant's first instruction given by the court. The plaintiff complains of the action of the court in refusing his fourth which declared that the third defense set up by defendant to the effect that the contract sued on was rescinded by mutual consent, and also the fourth defense to the effect that Kolb, while acting as defendant's agent, was secretly acting as agent for plaintiff in making the trade, were both eliminated from the case by the admission of the defendant.

If the defenses pleaded in the answer were inconsistent—if the proof of one would disprove the other—the plaintiff should have moved to strike them out; but failing in that, we do not see that this objection could be raised by an instruction. Even if the defendant did testify at the trial that the reason why he did not carry out the contract was that he "had been fooled," "that the land had been falsely represented," surely the admission so made did not have the effect to preclude him from the benefit of the other defenses

pleaded and proved. We know of no rule of practice that would justify a court on any principle of waiver or estoppel to so instruct a jury. We think that the judg-ment was for the right party and accordingly it is hereby ordered to be affirmed. All concur.