JUDD, Appellant, v. WALKER et al., Respondents.

**St. Louis Court of Appeals, October 2, 1905.**

1. **FRAUD AND DECEIT:** Misrepresenting Number of Acres. Where a vendor of land makes false statements, positively as of his own knowledge, regarding the number of acres in the tract about which negotiations are pending for purchase by the acre, such statements constitute fraud.

2. ———: ———: Caveat Emptor. The rule of *caveat emptor* applies only where the defect complained of is open and patent to one exercising ordinary business care and attention; the number of acres in a tract of land is not a fact patent to the observation of one exercising ordinary care.

3. ———: ———: ———: Survey. The duty of one purchasing land to use means of knowledge easily within reach to ascertain the amount thereof, does not require him to employ a surveyor, where the vendor makes positive representations, as of his own knowledge, as to the number of acres.

4. ———: ———: ———. A vendor of land who makes false statements regarding the number of acres he is selling, knowing the statements to be false, can not claim that the purchaser was careless and inattentive in discovering the truth; a purchaser has a right to rely upon positive statements of fact and need not use his means of knowledge.

5. ———: ———: Principal and Agent: Joint Liability. A principal who receives the benefit of a sale of land made through the fraudulent representations of his agent is liable jointly with the agent in an action for fraud and deceit.

6. ———: ———: ———: Parties. An agent of the purchaser of land, who negotiated the purchase, is not a necessary party in an action for fraud and deceit, brought by his principal against the vendor.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby,* Judge.

REVERSED AND CERTIFIED TO SUPREME COURT.

*Ball & Sparrow* for appellant.

(1) Defendant Walker having falsely represented the number of acres of land, with intent to defraud, plaintiff, believing and relying upon the representations so made, is entitled to recover in this case against both defendants. Brooking v. Shinn, 25 Mo. App. 277; Arthur v. Mfg. Co., 12 Mo. App. 335; McBeth v. Craddock, 28 Mo. App. 380; Shinnabarger v. Shelton & Sons, 41 Mo. App. 147. (2) Defendant Naxera having ratified the acts and representations of his agent Walker, is bound thereby, even though he might never have seen plaintiff or plaintiff's agent, Mr. Bourland. Short v. Stephens, 92 Mo. App. 151; Stafford Bros. v. Bank, 81 Mo. App. 46; Bennett v. Judson, 21 N. Y. 238; Mayes v. Dean, 5 L. R. A. 540. (3) Defendant Naxera is liable in this action even though Mr. Walker did not represent him as his agent, because by executing the deed to plaintiff, Naxera ratified the acts and deeds of Walker in the sale of the land. McLochlin v. Barker, 64 Mo. App. 511; Mechem on Agency, sec. 148. (4) Defendants may insist that plaintiff, and his agent, Bourland, by diligent inquiry, or by having the land surveyed, might have discovered that Walker's representations were false, and that if they could have done so then they are not liable, but such is not the law. Bigelow on Frauds, page 523 et seq.; Cottrill v. Krum, 100 Mo. 397, 13 S. W. 753; Kerr on Frauds, page 80; Gottschalk v. Kircher, 109 Mo. 184, 17 S. W. 905; Livingston v. Strong, 107 Ill. 302; Labbe v. Corbett, 69 Tex. 509; Watson v. Atwood, 25 Conn. 313; Graham v. Thompson, 55 Ark. 299; Kiefer v. Rogers, 19 Minn. 32; Maxfield v. Schwartz, 10 L. R. A. 606; Fargo Gas Light & Coke Co. v. Fargo Gas Light & Electric Co., 37 L. R. A. 593.

114 app—9

Judd v. Walker.

*Pearson & Pearson* for respondent.

When a vendee is furnished every facility to acquaint himself with the land purchased, and was over it previous to and at the time of sale, with every opportunity to measure it and acquaint himself with every particle of the ground, he cannot be heard to charge the vendor or his agent with fraud in misrepresenting the number of acres contained. Sullivan v. Ferguson, 40 Mo. 79; Miries v. Summerville, 85 Mo. App. 185; Davis v. Ins. Co., 81 Mo. App. 264; Green v. Worman, 83 Mo. App. 575; Harrison v. Waldon, 89 Mo. App. 164. All the parties necessary to a complete determination of settlement of the questions involved in a petition should be made parties plaintiff or defendant. Sec. 543, R. S. 1899; Wilson v. Polk Co., 112 Mo. 138, 20 S. W. 469.

## STATEMENT.

This is an action at law on an allegation of fraud and deceit for the sale of lands. The evidence was to the effect that the plaintiff, Curtis J. Judd, treasurer of the Keeley Company of Dwight, Illinois, is a man of means and invests surplus money in lands. One Bourland, a banker at Pontiac, Illinois, and Mr. Judd have an arrangement whereby Bourland looks around for lands out of which money can be made by buying and reselling, and upon locating such lands, Mr. Judd furnishes the money and the land is purchased in the name of Judd as a speculation. The business is all done by Bourland, subject to Judd's approval. On the occasion in question, Bourland as agent of Judd, came to Louisiana, Missouri, in search of lands and met the defendant, Walker, a real estate agent at that place, who drove him across the Mississippi river into Pike county, Illinois, and upon the lands of the defendant, Naxara, which he then had for sale as agent for Naxara. The land was irregular in shape, being bounded on one side by the Sny

and running to a dull point on the north end. Walker, Naxara's agent, informed Bourland, Judd's agent, that the two pieces of land which were adjacent and owned by Naxara, contained one hundred and seventy-eight acres, one piece containing eighty acres and the other ninety-eight acres and offered the tract at forty dollars per acre. Bourland looked at the land and they then drove on and viewed other properties. Returning to Louisiana, both Bourland and one Sims, a friend of Bourland who was accompanying him on the trip, informed Walker that Bourland was acting for Judd and that he would wire Judd for consent to buy the Naxara lands, which he did and received Judd's permission by wire, which was communicated to Walker. On the following day, Bourland drove to and upon the lands in order to locate a certain slough thereon, and that evening paid Walker $200 earnest money and entered into a contract in writing, whereby he agreed to purchase said lands as soon as Walker could procure satisfactory abstracts, conveyances, etc. At the time of executing this contract, Walker said he was not sure of the number of acres in excess of ninety in the irregular shaped tract adjacent to the Sny and therefore they had better put in the contract the round number of ninety acres and he would ascertain definitely thereafter. A month later Walker drew up a deed which was executed by his principal, Naxara, and acknowledged before Walker as a notary public, which deed purported to convey to Judd the two tracts of land mentioned, one hundred and seventy-eight acres, for which a draft payable to Walker, covering the balance due at $40 per acre, was delivered to the bank in payment therefor, and the deed was thereupon delivered to Judd.

It was shown by the evidence, both of Walker and Naxara, as well as otherwise, that each of them knew there was not one hundred and seventy-eight acres of the land; that Naxara claimed to own one hundred and sixty acres only, and that he refused to execute the deed

for one hundred and seventy-eight acres at Walker's request and advised with friends about it before signing the same, and finally consented to do so upon the agent Walker giving him a written obligation to hold him harmless in event the shortage of acres was discovered and he would be called upon to make good; that Naxara received pay for one hundred and sixty acres of the land at forty dollars per acre, less Walker's commission, a total of $640, and that Walker appropriated to his own use, with Naxara's consent and approval, forty dollars per acre for the remaining eighteen acres besides his commission. Some time thereafter, Judd caused the land to be surveyed, whereby it was ascertained that it contained 153.24 acres only, instead of 178 acres, there being a shortage of 24.76 acres. One witness also testified that between the time of the negotiation of the land and the making of the deed, Walker told him in his (Walker's) office that Bourland was going to take the land and that he was getting paid for a number of acres, something like twenty-seven acres more than there was in the tract. Upon this state of facts, this suit for fraud and deceit was instituted to recover this shortage at forty dollars per acre.

The salient points clearly established by the evidence are that Walker was the agent for Naxara for the sale of these lands; that Bourland was the agent of Judd to buy and so informed Walker during the negotiations; that Bourland viewed the lands twice before the purchase; that Walker made positive and direct representations to Bourland, in the presence of Sims, that the irregular tract contained ninety-eight acres and the whole tract contained one hundred and seventy-eight acres; that such representations were then false and were known by Walker to be false when made; that Bourland believed and relied upon such representations, trusting thereto, and made the purchase and caused Judd to pay for the land upon the faith thereof; that the purchase was not made in a lump but at an agreed price of forty

dollars per acre; that the land was of such irregular shape as would render it impossible for one to form an accurate judgment as to the number of acres contained therein; that the defendant, Naxara, did not meet the purchaser nor his agent and personally made no representations, but that both he and Walker knew, however, that there was not one hundred and seventy-eight acres in the tract and that he only claimed one hundred and sixty acres; that Naxara had knowledge of the transaction before its consummation and assisted his agent, Walker, to consummate the fraud by executing a deed for one hundred and seventy-eight acres of land, taking an obligation from Walker to protect himself, together with compensation for one hundred and sixty acres, or six and seventy-six one-hundredth acres more than he owned, permitting Walker to appropriate forty dollars per acre for the land which Naxara did not claim to own.

Bourland had no interest in the land. His arrangement with Judd is to the effect that he looks up and purchases the lands for which Judd furnishes the money. Bourland then finds a buyer and sells the land and they divide the profits and losses occasioned by such sales. The land mentioned herein, together with other adjoining lands purchased at the same time from other parties, were all sold by Judd prior to the filing of this suit, at a profit sufficient to reimbuse him for his entire expenditure in that behalf, and therefore, there was no loss such as would or did occasion a contribution from Bourland to Judd on account of the shortage of acres in the Naxara tract.

Separate answers by each defendant consisted of a general denial and a plea that the cause was not prosecuted by all of the parties in interest, thereby raising the point that because of such arrangement as to profits and losses above mentioned, between Bourland and Judd, Bourland was a necessary party plaintiff.

At the conclusion of the evidence for the plaintiff,

the court peremptorily instructed the jury that the finding should be for the defendant. In obedience thereto, the jury returned a verdict as directed. After unsuccessful motions to set the same aside and for new trial, plaintiff appeals.

NORTONI, J. (after stating the facts).—1. There are cases which hold that where the parties go upon the land during negotiations and the seller points out the true boundaries thereof to the purchaser with the statement of the number of acres contained therein and upon this statement of the acreage the purchaser relies and purchases the land, no action of deceit can be maintained by the injured party on account thereof. The reason assigned in these cases seems to be two-fold; first, that parties ought not to rely on such statements, and second, that the parties were upon the land and the means of information were equally open to both, therefore, the rule *caveat emptor* applies, as the true number of acres could be ascertained by ordinary vigilance on the part of the purchaser. This doctrine is announced in the following cases: Gordon v. Parmalee et al., 2 Allen (Mass.), 212; Mooney v. Miller, 102 Mass. 217; Credle v. Swindell, 63 N. C. 305. The Kansas City Court of Appeals, in the case of Mires v. Summerville, 85 Mo. App. 183, following the Massachusetts case of Gordon v. Parmalee, supra, applied the same rule to the case therein decided. In that case as reported, however, it does not appear that the seller pointed out the true boundaries of the land, and this seems to be the principal fact upon which the judgments were predicated in the cases above cited. In fact, the Kansas City Court of Appeals, in the case mentioned, carried the doctrine of *caveat emptor* to its extreme limit, if not beyond it, and we are confronted with their adjudication in the present controversy. After much careful and painstaking investigation, we are satisfied that the law is quite generally established throughout those jurisdictions

where the common law obtains, to the effect that false statements and representations made by the vendor, positively as of his own knowledge as to the number of acres in a certain tract of land when the tract is being negotiated by the acre, are not regarded as expressions of opinion, but on the contrary, are considered statements of fact, and as such constitute fraud. This is certainly the doctrine of our Supreme Court. [McGhee v. Bell, 170 Mo. 121, 70 S. W. 493 (see also dissenting opinion, 170 Mo. 150-151); Buford v. Caldwell, 3 Mo. 335; Hitchcock v. Baughan, 44 Mo. App. 42; Brooking v. Shinn, 25 Mo. App. 277; Leicher v. Keeney, 98 Mo. App. 394, 72 S. W. 145; Starkweather v. Benjamin, 32 Mich. 305; Dunn v. White's Admr., 63 Mo. 181; Foster v. Kennedy, 38 Ala. 359; Beardsley v. Duntley, 69 N. Y. 577; Conn. v. Atwell, 46 N. H. 510; Whitnet v. Allaire, 1 N. Y. 305; Clark v. Baird, 9 N. Y. 183; Weatherford v. Fishback, 4 Ill. 170; Griswold v. Gebbie, 126 Pa. St. 353; Hill v. Brower, 76 N. C. 124.] This view has become almost universally recognized and adopted by the courts throughout the country. The generally accepted doctrine on the subject is thus announced in 14 Amer. & Eng. Ency. of Law (2 Ed.), 45:

"Statements as to Boundaries and Acreage.—There are some cases in which it has been held or said that a false statement as to the boundaries of a tract of land, or as to the number of acres which it contains, will not support an action of deceit, but they base the rule on the ground that such statements ought not to be relied upon, and not on the ground that they are expressions of opinion. Statements as to such matters, if made by a person positively, and as of his own knowledge, are statements of fact, and have often been held to constitute fraud."

In fact, the rule announced above is the same which applies in cases of fraud and deceit generally, and is to the effect that the party owning the property or article is presumed to know the facts. No one has prevented

him from knowing them, and one dealing with him has the right to rely upon the positive statements and representations of fact pertaining thereto, even though the means of knowledge were specially open to him, provided the representations were relied upon and were sufcient to and did actually induce action, for the law will not hear the guilty party say, "You were yourself guilty of negligence," or "You ought not to have trusted me." [Bigelow on Frauds, 523-524; Kerr on Frauds (2 Ed.), 40-42; Cottrill v. Krum, 100 Mo. 397, 13 S. W. 753; Barker v. Scudder, 56 Mo. 272; Carter v. Black, 46 Mo. 384; Buford v. Caldwell, 3 Mo. 477; Smithers v. Bircher, 2 Mo. App. 499.]

2. This case reeks with fraud. The evidence shows conclusively that Walker made positive representations to Bourland as to the number of acres in the tract from the inception of the trade up to the time of drawing the contract, at which time he suggested that as he was not sure of the exact number of acres in excess of ninety, they would call the irregular tract ninety acres in round numbers, leaving the impression that in the interim, prior to the making of the deed, he would ascertain the true acreage. Bourland relied upon what he said and trusted to him to make good his representations. Walker himself drew the deed for one hundred and seventy-eight acres, and procured his principal's signature thereto by giving to him an obligation of indemnity as mentioned, and collected the cash for the full number of acres as represented by him in the first instance, knowing at the time that he was then and there perpetrating a heinous fraud upon the purchaser. It would seem that in a case of such gross deception a recovery should be had without much difficulty. The respondent contends, however, that inasmuch as Bourland went upon the land twice and viewed the same, the parties were then upon an equal footing, and means of knowledge being open to him, the rule of *caveat emptor* applies; that it was the purchaser's duty to use his senses and vigilance and

ascertain for himself the true facts, and not having done so, a recovery is precluded. The cases of Mires v. Summerville, Mooney v. Miller, Gordan v. Parmelee, and Credle v. Swindell, supra, are cited and relied upon as supporting this contention. Chancellor Kent says:

"The common law affords to every one reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information. It reconciles the claims of convenience with the duties of good faith, to every extent compatible with the interests of commerce. This it does by requiring the purchaser to apply his attention to those particulars which may be supposed within the *reach of his observation and judgment;* and the vendor to communicate those particulars and defects which cannot be supposed *to be immediately within the reach of such attention.* If the purchaser be wanting of attention to these points, where attention would have been sufficient to protect him from surprise or imposition, the maxim *caveat emptor,* ought to apply." [2 Kent's Comm. (14 Ed.), 484-485.]

The true test of the application of the rule *caveat emptor* is the liability of the defect complained of to the observation and judgment of one exercising ordinary and usual business attention, care and circumspection; that is, such care and attention as is usually exercised by ordinarily prudent men in like business affairs. The law requires this much and no more. It does not require nor expect the purchaser to exercise a degree of care and prudence greater than business men ordinarily exercise in like transactions. The rule is a reasonable one and its chief purpose is to require men to see and know such things as are open and patent to their senses upon penalty. It is where the defect complained of is open and patent to the senses of one exercising ordinary business care and attention only that the rule of *caveat emptor*

applies. [2 Kent's Comm. (14 Ed.), 479-484; Weather-
ford v. Fishback, 4 Ill. 170; Starkweather v. Benjamin,
32 Mich. 305.] The rule mentioned has been carried to
its full extent in this State. In Morse v. Rathburn, 49
Mo. 91, the alleged false representations were that cer-
tain unimproved portions of the farms were well timber-
ed and that the soil was good, whereas most of the tim-
ber had been cut off and the land was broken and rocky.
The plaintiff, having been over the land during negotia-
tions, the court very properly denied a recovery by the
application of the rule aforesaid, on the ground that the
matters and things about which the alleged false repre-
sentations were made were open to the observation of
the purchaser. To the same effect is the case of McFar-
land v. Carver, 34 Mo. 195, in which case the fraud and
deceit alleged was as to certain representations regard-
ing the quality of the lands, and it appeared that one
hundred and twenty acres thereof were subject to over-
flow. The court held that if the defect was patent to
observation, no recovery could be had therefor.

Respondents press the case of Langdon v. Green, 49
Mo. 363, upon us and insist that it is in point here. In
that case the rule of *caveat emptor* was applied and re-
covery on account of false representations was defeated.
By a careful perusal of that opinion, it will be observed
that the case is quite different from the one at bar. There
the misrepresentations complained of (in so far as the
land was concerned) were that "only a certain amount
of the land had been washed away by the Missouri river,"
(l. c. 365) whereas a larger quantity had been washed
away, and at page 370 it is shown that the complaining
party was familiar with the premises and had had the
same in his hands for sale as agent for several months
immediately prior to his purchase. It was upon this
state of facts that the rule of means of knowledge was
applied and, we think, properly, as in that case the com-
plaining party being familiar with the premises, the
amount of land washed away by the river was patent,

the defect was open to the senses of the purchaser and the rule *caveat emptor* ought to apply.  It was a proper case for its application, as we understand the law, for it goes without saying that a man may look over a piece of land and discover about how much it is damaged by the washing away of the soil, whereas it would be quite impossible for him to look at a tract and say how many acres are contained therein.  That case is not an authority on the state of facts now under consideration.  Each of these cases, and in fact all of the well considered cases, treat of the rule as one resting upon reason and applying only where the matters complained of were equally open to the senses of the parties and liable to discovery by the exercise of ordinary business sagacity, and in fact, it is said the principle is not applicable at all where there is a positive misrepresentation of a fact essential and material to the subject in question and proper diligence has been used by the purchaser in the course of the transaction; and proper diligence is only such diligence as is usually employed by prudent men in like affairs.  [Kerr on Frauds (2 Ed.), 42; 14 Amer. & Eng. Ency. Law (2 Ed.), 119.]  On the other hand, in Stebbins v. Eddie, 4 Mason, 414 and 420, Judge Story says:  "Where the sale is fair and the parties are equally innocent, there is little if any hardship and much convenience in holding to the rule of *caveat emptor.*"  We might add here that the general doctrine laid down in the books as elementary is, that the doctrine of notice and means of knowledge has no application where distinct and positive representations of fact have been made, have been relied upon and have induced action. [Kerr on Frauds (2 Ed.), 40-41; Bigelow on Frauds, 533-534; Herman v. Hall, 140 Mo. 270, 41 S. W. 733; Cottrill v. Krum, 100 Mo. 404, 13 S. W. 753.]

Entertaining these views, we are fully persuaded that the case under consideration it not one where the rule should find application.  To apply it here we must find that the alleged shortage of acres in the tract was

open and patent to the observation of the purchaser and within the range of his senses while viewing the lands. This we cannot do as it is a matter of common knowledge that a man cannot view a tract of land and arrive at anything like an accurate estimate of its contents. As said by the Supreme Court of Michigan: "It cannot be generally true that a person can judge of the contents of a piece of land by the eye." [Starkweather v. Benjamine, 32 Mich. 305.] See also McGhee v. Bell, 170 Mo: 121, where in both opinions, this case is quoted and approved (Majority opinion, l. c. 135; dissenting opinion, l. c. 150) ; and also cited approvingly by the Kansas City Court of Appeals in Leicher v. Keeney, 98 Mo. App. 394, a case more recent than Mires v. Summerville, supra.

3. Considering the next proposition, that Bourland having viewed the lands, he should have used vigilance to ascertain the fact of acreage: To follow out this suggestion, a survey would have been necessary. The rule only requires that Bourland should use that degree of business circumspection usually exercised by prudent men in like transactions. This being true, he would be chargeable with neglect in that behalf only in event that prudent men usually cause surveys to be made under like circumstances. In dealing with this suggestion, we must apply a degree of common sense commensurate with the case in hand and view it in the light of common knowledge and every-day experience pertaining to like affairs. From these bearings, we all know that land in large tracts is bought and sold almost daily by the acre in this country without surveys. This arises no doubt from the fact that the original government surveys are usually accurate and men rely thereon, together with the presumption usually indulged that he who owns the land knows the acreage, and the negotiations are usually had on the faith of prior surveys and representation of the owner. The citizens of Missouri from time immemorial have been accustomed to deal

with the utmost good faith in matters of this kind and it would be a sad commentary indeed upon the moral sense and integrity of the State for the courts to say, even by inference, that our citizens can no longer be trusted in this behalf. Our conclusion is that in case of positive representation of a given number of acres in a tract, ordinary business prudence does not require a survey and measurement thereof and that the party relying upon such representations of fact is not precluded from recovery by not causing measurements to be made in advance of the purchase.

The words "means of knowledge easily within reach" employed in some of the cases ought not to be construed to require the purchaser to seek out and employ a surveyor for the purpose of verifying a fact positively asserted by the seller.

4. There is yet an additional reason why this case should have gone to the jury. Respondents were in no position to avail themselves of appellant's want of care and lack of attention. The general rule seems to be well settled that where the parties deal fairly or at arm's length, the rule of *caveat emptor* as above indicated applies, but when fair dealing is departed from by the vendor making false statements of fact as of his own knowledge, the falsity of which is not palpable to the purchaser, the purchaser has the undoubted right to rely implicitly upon such statements and the principle has no application (authorities supra), and in event the purchaser is entrapped thereby and afterwards calls upon the vendor in a court of justice to make compensation for his deceit, the law will not permit him to escape by urging the folly of his dupe nor by admitting that he, the seller, was a knave and a scoundrel, and averring the defrauded party was negligent and careless in thus believing and trusting him, for this would be equivalent to saying, "You trusted me, therefore I have a right to betray you." [Cottrill v. Krum, 100 Mo. 397; Leicher v. Keeney, 98 Mo. App. 394; Fargo Gas Light & Coke Co.

v. Fargo Gas Light & Electric Co., 4 N. D. 219, 37 L. R. A. 593; Nead v. Bunn, 32 N. Y. 280; Redding v. Wright, 49 Minn. 322; Linington v. Strong, 107 Ill. 302; Labbe v. Corbett, 69 Tex. 509; Watson v. Atwood, 25 Conn. 320; Maxfield v. Schwartz, 10 L. R. A. (Minn.) 607; Graham v. Thompson, 55 Ark. 299; Keifer v. Rodgers, 19 Minn. 38; McGhee v. Bell, 170 Mo. 121.]

On this question, Mr. Bigelow states the law thus:

"The proposition has now become very widely accepted, at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of facts, notwithstanding the fact that the means of knowledge were specially open to him, or though he had legal notice, as, e. g., in the public registry, of the real state of things. It may be improbable that a man with the truth in reach should accept a representation made in regard to it, but the improbability can be no more than matter of fact. If the representation were of a character to induce action, and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent (in reality negligence is beside the case where the misrepresentation was calculated to mislead, and did mislead); for it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.' This indeed appears to be true even of cases in which the injured party had in fact made a partial examination. Nor is the rule applicable merely to cases which in some respects stand upon special ground, as, e. g., suits for specific performance; it applies to rescission equally, *and indeed is a general rule.*"  [Bigelow on Frauds, 523-525.]

Mr. Kerr, in his work on Frauds (2 Ed.), 40-41, says:

"If a definite or particular statement be made as to the contents of property, and the statement be untrue, it is not enough that the party to whom the representa-

tion was made may have been acquainted with the property. A very intimate knowledge with the premises will not necessarily imply knowledge of their exact contents, while the particularity of the statement will naturally convey the notion of exact admeasurement. The fact that he had the means of knowing or of obtaining information of the truth which he did not use is not sufficient. It is not indeed enough that he may have been wanting in caution. A man who has made false representations, by which he has induced another to enter into a transaction, cannot turn around on the person whom he has defrauded and say that he ought to have been more prudent and ought not to have concluded the representations to be true in the sense which the language used naturally and fairly imports. Nor is it enough that there may be circumstances in the case which, in the absence of the representation, might have been sufficient to put him on inquiry. The doctrine of notice has no application where a distinct representation has been made. A man to whom a particular and distinct representation has been made is entitled to rely on the representation and need not make any further inquiry, although there are circumstances in the case from which an inference inconsistent with the representations might be drawn. He is not bound to inquire unless something has happened to excite suspicion, or unless there is something in the case or in the terms of the representation to put him on inquiry. The party who has made the representation can not be allowed to say that he told him where further information was to be got, or recommended him to take advice, and even put into his hands the means of discovering the truth. However negligent the party may have been to whom the incorrect statement has been made, yet that is a matter affording no ground of defense to the other. No man can complain that another has relied too implicitly on the truth of what he himself stated."

The doctrine of the two learned authors above is evidently both sound and just, and it is the doctrine of

our Supreme Court on the subject as appears from Cottrill v. Krum, 100 Mo. 397, as well as McGhee v. Bell, 170 Mo. 121.

5. The cases of Dunn v. White's Admr., supra, Green v. Worman, 83 Mo. App. 568, and Hitchcock v. Baughan, 36 Mo. 216, cited and relied on by respondents, are not in point here. Those cases are treated by the courts as belonging to that class in which no actual fraud is shown and the controversy arose out of honest error and mistaken opinion, as where the parties being on the land and the seller informs the purchaser that he did not know where the boundaries were, but pointed out what he *thought to be such*. Such statements, instead of being treated as a positive statement of fact, it is held, amounted to no more than an honest expression of opinion and was evidently so understood by the parties at the time, and inasmuch as the purchaser knew as much about the boundaries as did the seller and the seller did not attempt to make any positive representations of fact pertaining thereto, a recovery at law could not be had thereon. Notwithstanding the very high opinion we entertain of the Kansas City Court of Appeals, and the very great esteem in which we hold the learned judge who wrote the opinion in the case of Mires v. Summerville, 85 Mo. App. 183, after much careful and painstaking investigation and mature deliberation, we are constrained and persuaded to hold that the facts in this record make a proper case for the jury and that the learned trial judge erred in peremptorily directing a verdict for the respondents.

6. It is conclusively shown that while the respondent, Naxara, may have taken no part personally in the fraudulent representations, he became aware of the fraud being perpetrated in time to have prevented it, but instead of so doing, deliberately became a party thereto by executing a deed purporting to convey more land than he owned or claimed to own and took an obligation from his agent, Walker, to protect himself in event the

fraud was discovered and he would be called upon for reimbursement on account thereof. He also accepted compensation for more land than he owned, all of which appears from his own testimony. It is a familiar principle that false and fraudulent representations of an agent, when acting within the scope of his authority, binds his principal, and to represent the acreage of a tract of land in his hands for sale is within the scope of authority of a real estate agent beyond question. It is likewise familiar law that a principal cannot take any benefit arising by virtue of the false and fraudulent representations of his agent, within the scope of his authority, although he may have been no party to the representations. He cannot adopt and take benefit for a contract or sale brought about and entered into by such fraud of the agent on his behalf, and at the same time repudiate the fraud upon which the transaction was built. The statements and representations in this case were clearly ratified and adopted by Naxara and he is jointly liable with Walker therefor. [Kerr on Frauds (2 Ed.), 82; Green v. Worman, 83 Mo. App. 568; Griswold v. Gebbie, 126 Pa. St. 353; Morse v. Rathburn, 49 Mo. 97; Short v. Stephens, 92 Mo. App. 151.]

7. Bourland had no interest in the subject of this controversy and is not a necessary party to the suit.

For the reasons above given, the judgment is reversed and the cause remanded to be proceeded with as herein indicated.

It appearing that the views entertained by this court and herein announced are contrary to and in conflict with those expressed by the Kansas City Court of Appeals in the case of Mires v. Summerville, 85 Mo. App. 183, this case is therefore certified to the Supreme Court for final determination, in accordance with the constitutional mandate in that behalf provided. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.