## MARGARET NEUMAN, Appellant, v. MINNIE FRIEDMAN et al., Respondents.

St. Louis Court of Appeals, April 4, 1911.

1. **PRINCIPAL AND AGENT: Agency for Both Parties: Validity
   of Contract.** A contract for the exchange of real estate, negoti-
   ated by an agent in the employ of both parties thereto, is un-
   enforceable and void as to a party thereto who was not inform-
   ed of the double agency, and it is immaterial that there was
   neither intentional fraud nor injury done.

2. **RESCISSION: Exchange of Real Estate: Principal and Agent:
   Agency for Both Parties: Constructive Fraud.** Where the same
   agent represented both parties, without the knowledge of one
   of them, in effecting an exchange of real estate, that party was
   entitled to a rescission upon offering to do equity, by tendering
   to the other party a deed to the property conveyed to her, and
   offering to account for the rents, by offsetting the reasonable
   rental of the one property against the other.

3. ———: ———: **Facts Held to Show Actual Fraud.** In an action
   to rescind an exchange of real estate effected by one who was
   agent for both parties, of which fact defendant was, but plaint-
   iff was not, cognizant, evidence *held* to show plaintiff was de-
   signedly defrauded.

4. ———: ———: **Construction of Contract.** In an action to res-
   cind an exchange of real estate, evidence *held* to show that de-
   fendant, through his agent, agreed to reduce an incumbrance
   on the land offered by him, so as to equalize the agreed value
   of the two properties.

5. **PRINCIPAL AND AGENT: Agency for Both Parties: Es-
   toppel.** A person who employs one, whom he knows is the
   agent of another person, to effect an exchange of real estate

Neuman v. Friedman.

between such persons, the latter being ignorant of the double agency, is estopped to deny the agency, so far as his rights are concerned, and is estopped by the acts of such agent.

6. RESCISSION: Exchange of Real Estate: Fraud: Diligence in Discovering: Principal and Agent: Agency for Both Parties. In an action to rescind an exchange of real estate, brought about by one who was agent for both parties, of which fact defendant was, but plaintiff was not, cognizant, *held* that plaintiff did not forfeit her rights, growing out of actual fraud perpetrated, by reason of lack of diligence on her part, since, being without knowledge of the agent's double employment, she had a right to trust and rely on him.

7. ———: ———: ———: ———: ———: ———. In an action to rescind an exchange of real estate, brought about by one who was agent for both parties, of which fact defendant was, but plaintiff was not, cognizant, in determining whether plaintiff forfeited her rights, growing out of actual fraud perpetrated by such agent, by reason of lack of diligence on her part in signing the contract presented by such agent, without reading it, her age, her difficulty in understanding and speaking the English language, and the fact she was not accustomed to transacting business affairs are proper matters for consideration.

8. FRAUD AND DECEIT: Lack of Diligence: Negligence. In every instance where ordinary care or diligence is the subject matter of investigation, the inquiry is to be had with reference to the circumstances of the particular case.

9. RESCISSION: Diligence: Estoppel. The principle proscribing the want of diligence from being invoked against one who has properly relied and acted on positive and false representations, knowingly made by another for the purpose of inducing action, obtains as well with respect to proceedings for rescission as in others.

10. ———: Exchange of Real Estate: Authority to Render Judgment for Damages: Equity. Where, in an action to rescind an exchange of real estate, the evidence showed defendant had failed to comply with a condition in the contract of exchange to reduce an incumbrance on the land conveyed by him, although rescission was denied, because defendant had disposed of the property plaintiff had conveyed to him and, therefore, it was impossible to place the parties in *statu quo*, equity, having rightfully obtained jurisdiction, will, under the prayer of the petition for equitable relief, award plaintiff a judgment for damages.

11. EQUITY: Rescission: Equitable Relief: Judgment for Damages. While, ordinarily, damages are recoverable only in an action at law, yet where relief as to the cancellation of a con-

tract is denied because the parties can not be placed in *statu quo*, a court of equity may render a judgment for damages, for the purpose of approximating a just result.

12. **PRINCIPAL AND AGENT:** *Agent for Both Parties: Liability of Agent.* Where an agent, without the knowledge of his principal, acted for the other party to a contract for the exchange of land, and the principal brought an action to rescind the contract, but was denied rescission because the parties could not be put in *statu quo*, and the court found that she was entitled to receive from such other party a sum of money which the latter had agreed to pay on a mortgage on the land conveyed by him, but had wrongfully refused to pay, judgment for such sum should be rendered not only against him, but against the agent, who was a party to the action, as well.

Appeal from St. Louis City Circuit Court. — *Hon. William M. Kinsey,* Judge.

REVERSED AND REMANDED *(with directions).*

*John Lally* for appellant.

Where the same person is agent for both parties to a transaction without the knowledge of both, a contract made by such agent is void as to the one not having knowledge of the dual agency. McClure v. Ullman, 102 Mo. App. 697; Harper v. Fidler, 105 Mo. App. 680; Rosenthal v. Drake, 82 Mo. App. 358; Smith v. Tyler, 57 Mo. App. 668; Chapman v. Currie, 51 Mo. App. 40; DeStieger v. Hollington, 17 Mo. App. 382; Mechem on Agency, secs. 454, 455, 456, 461, 469, 470, 472; 31 Cyc., pp. 1431, 1432, 1572, 1573.

*Andrew Johnson* for respondents.

Recission of contract must be entire. A person will not be allowed to avoid the contract as to those parts which would work him an injury and affirm it as to those which would be profitable to him. Lapp v. Ryan, 23 Mo. App. 436; Estes v. Reynolds, 75 Mo. 853; Stevens v. Hyde, 32 Barb. 182.

NORTONI, J.—This is a suit in equity. After hearing the proof, the court dismissed the bill without prejudice and plaintiff prosecutes an appeal from that judgment.

The suit proceeds for a rescission of a contract of sale of certain real property and prays a cancellation of a deed passed by plaintiff to defendants, Friedmans, and the reinvestment of title in her, together with a prayer for general relief. It prays a recovery too against defendant Graham on the ground of fraud. It appears plaintiff, who is an old German lady, unlearned in the English language, owned a residence on Cook avenue in the city of St. Louis, which she desired to dispose of at $3750. The property was incumbered, however, by a mortgage to the extent of $900. About April 1, 1909, she employed D. W. Graham, a real estate agent, to dispose of the property for her and agreed to pay him $250 commission for so doing. Graham formerly officed with defendant B. Friedman, who is the husband of his co-defendant, Minnie Friedman. It appears by admissions in the pleadings that the two Friedmans, though husband and wife, were partners and as such owned some flats on Wells avenue, in the city of St. Louis, which they desired to sell or exchange. Graham entered into negotiations with B. Friedman, acting for himself and his co-defendant, touching an exchange of plaintiff's property for that of defendants', whereupon defendants agreed to pay Graham a commission of one and one-fourth per cent on the agreed value of their property, if he effected an exchange for them. Graham did not communicate the fact of his double agency to plaintiff but proceeded forthwith to persuade her that an exchange of property should be made. B. Friedman admits that he employed Graham at the same time to effect an exchange of the Wells avenue property and agreed to pay him therefor a commission of one and one-fourth per cent on the agreed valuation of $6500 and, indeed,

he admits too that he subsequently paid Graham such commission. It is conceded throughout the case that plaintiff was wholly ignorant as to the matter of Graham's employment by defendants until some months after the exchange of property was consummated and the deeds thereto recorded. According to the evidence of both plaintiff and Graham, he advised her to exchange her property at a valuation of $3750 for that of defendants at a valuation of $6500, the mortgage on each to be deducted therefrom, which arrangement resulted in a balance of $600 in favor of plaintiff. This $600 was not to be paid to plaintiff in cash, but instead, under the agreement, it was to be paid or credited on the $4250 mortgage against the Wells avenue property owned by defendants, so as to reduce that incumbrance to $3650. Defendant B. Friedman denies this and says the agreement was to exchange their property, subject to $4250 incumbrance, for that of plaintiff, subject to $900 incumbrance, equity for equity, even, but the circumstance that he valued the Wells avenue flats at $6500 and paid a commission to Graham accordingly is persuasive to the effect that the agreement was as related by both plaintiff and Graham. It appears after an exchange of property was agreed upon between plaintiff and defendants, negotiated entirely through Graham, the parties executed a writing whereby they stipulated for an exchange of deeds within ten days thereafter without any mention whatever of a balance of $600 being available to plaintiff. But it appears as to this that defendant B. Friedman wrote this agreement and Graham conveyed it to plaintiff for her signature, which she affixed on his assurance that it was all right, without reading. As before stated, plaintiff is an old German lady and scarcely able to speak the English language. Whether she could read it or not does not appear, but there is a strong inference that she could not. At any rate, plaintiff signed this contract, which Friedman had drawn up at his instance, through Graham,

without reading it, on the assurance of Graham, who at the time was, without plaintiff's knowledge, in the employ of defendants. On May 7, 1909, the deeds were exchanged between the parties through the agent, Graham. Plaintiff executed a general warranty deed, conveying her property on Cook avenue to the Friedmans, subject to a mortgage of $900, and defendants executed a general warranty deed to plaintiff whereby they conveyed their property on Wells avenue to her, subject to an incumbrance of $4250.

It is conceded throughout the case that plaintiff did not see the deed so made to her for about two months thereafter, as it was delivered by defendants to Graham and by him filed in the recorder's office of the city of St. Louis, where it is said to have remained for two months, when it was delivered to plaintiff. Upon the deed finally coming into the hands of plaintiff, her suspicions were aroused by the recital therein that the conveyance was subject to an incumbrance of $4250, when the incumbrance should have been reduced by defendants to the extent of $600; that is, to $3650. Upon inquiring into the matter, plaintiff discovered a swindle had been perpetrated upon her to the amount of $600 through the machinations of the agent, Graham and, defendants Friedmans. She charged the agent with the wrong and he confessed that the result of the trade defeated her out of $600, but said he was unable to state how it occurred. Upon further inquiry, plaintiff discovered for the first time that her agent, Graham, was in the employ of defendants, Friedmans, during all of the time the negotiations were pending, whereupon she immediately renounced the whole transaction and filed her bill in equity. By her bill, plaintiff tenders a deed conveying back to defendants the property on Wells avenue and prays the cancellation of the deed from herself to Friedmans and the reinvestment of the title to the Cook avenue property in her. The bill proceeds for a rescission upon the theory of both actual and constructive fraud

and besides offering to place defendants in *statu quo* and to do equity, contains as well a general prayer for equitable relief in the circumstances of the case.

The proof is conclusive that the agent, defendant Graham, who effected the exchange of property, was in the employ of both parties at the time pertaining to the same transaction and that defendants knew this but plaintiff did not.   It appears plaintiff moved promptly for relief upon discovering the facts, which was not until two months after the transfer, when her suspicions were aroused on receiving the deed from Graham, after it was recorded.   The proof is clear, indeed is not denied, that plaintiff was misled throughout by the conduct and representations of Graham, the agent, to the effect she was receiving $600 in addition to the property, through a credit of that amount on the $4250 mortgage, and the first suggestion she had to the contrary was when Graham delivered the deed to her, two months after it had been filed for record.   There can be no doubt of the rule, which proceeds from the precepts of public policy, to the effect that contracts, such as this one, negotiated by an agent in the employ of both parties thereto are not only unenforcible but absolutely void and will be so declared at the suit of a party thereto who was not informed of the fact pertaining to the double agency.   In such case, it is immaterial as to whether there was either intentional fraud or an injury done, for the rule is not intended to be remedial of actual wrong, but directs its denouncement as a preventive thereof, to the end of eliminating the mere possibility.   So jealous is the law with respect to the relation of trust which obtains between principal and agent that it condemns as fraudulent and affords the right of relief from, or the cancellation of, all contracts, conveyances, etc., which have been effected between the parties through an agent in the employ of both, provided the relief or cancellation

sought is by one who was ignorant of the double agency, and he is not esaopped from complaining on the theory of condonation. Obviously, one may not, with entire fidelity, serve two masters, representing adverse interests in ordinary commercial transactions, at the same time, and it is because of this that the salutary rule proceeds, affording relief to an innocent party without knowledge of the facts, though no actual fraud, designedly done, is present. [DeSteiger v. Hollington, 17 Mo. App. 382; McClure v. Ullman, 102 Mo. App. 697, 77 S. W. 325; Harper v. Fidler, 105 Mo. App. 680, 78 S. W. 1034; Smith v. Tyler, 57 Mo. App. 668; Rosenthal v. Drake, 82 Mo. 358; Chapman v. Currie, 51 Mo. App. 40; Atlee v. Fink, 75 Mo. 100.] So it is, on the uncontroverted facts of the case plaintiff is entitled to equitable relief upon offering to do equity, as she did, by tendering to defendants a deed to the property they had conveyed to her and offering to account for the rents through off-setting the reasonable value thereof against the reasonable value of the rents of the property which defendants received from her.

Aside from the constructive fraud above pointed out, which alone affords sufficient grounds for cancellation, the facts and circumstances in proof are quite conclusive to the effect that plaintiff was designedly defrauded as well. Though defendants deny that $600 was to be paid by them on the mortgage for plaintiff's benefit, the fact that they valued their property at $6500 and paid the agent a percentage commission thereon is a strong circumstance tending to support plaintiff's theory of the case, for if the equities in the two properties were to be exchanged evenly, as defendants say, why was any value at all placed upon either and calculations made deducting the mortgage indebtedness from each? It does not appear that defendants negotiated with plaintiff personally at any time, but the whole transaction was conducted through Graham, who was the medium of communication. Defendants, having confessedly em-

ployed Graham when they knew he represented plaintiff, are estopped from denying his agency in so far as their rights are concerned, and Graham admitted on the witness stand that it was understood by all defendants were to reduce the $4250 mortgage by paying $600 thereon. It may not be successfully said that plaintiff forfeited any rights as to the actual fraud perpetrated through lack of diligence on her part, for she was without knowledge of the agent's double employment and, so being, certainly was no less diligent than an ordinarily prudent person would be in trusting the agent she had employed and on whom she had a right to rely. Especially is this true in view of the fact that plaintiff is old and unlearned in the English language. Plaintiff is an old lady who had devoted her life to truck gardening and had lived in the city but a short time. That she was not accustomed to business transactions is obvious. The matters of her age, her difficulty as to understanding or speaking the English language and that she was not accustomed to transacting considerable business affairs are all proper for consideration under the requirement of the law as to reasonable diligence with respect to the means of knowledge at hand when she signed the contract presented by her agent without reading it. For in every instance where ordinary care or diligence is the subject-matter of investigation, the inquiry is to be had in the circumstances of the particular case. Persons of ordinary business prudence and circumspection frequently trust to their agents about matters of this kind and the law recognizes one's right to expect and enjoy fidelity to the trust in like circumstances. Especially is this true here, as plaintiff was wholly ignorant of the fact that at the very time the contract was presented by her agent with the assurance it was all right he was then in the pay of defendants, and it does not appear the contract was left in her possession, but on the contrary, the record suggests it was not. But, indeed, the question of plaintiff's negligence

with respect to this matter is beside the case, for if Graham was defendants' agent too, as he was, then they are estopped as to this matter, for it is not just that one who has deceived another should be permitted to say to him, "You ought not to have believed or trusted me." That the principle proscribing the want of diligence from being invoked against one who has properly relied and acted upon positive false representations, knowingly made by another with a purpose to induce such action, obtains as well with respect to proceedings for rescission as in others is undoubted. [Judd v. Walker, 215 Mo. 312, 331, 114 S. W. 979; s. c., 114 Mo. App. 128, 89 S. W. 558.]

Beyond question, plaintiff was defrauded of her rights to the extent of $600, but the court dismissed the bill, we believe, on the theory that, as defendants had disposed of the property which plaintiff had conveyed to them, a cancellation could not be effectuated for the reason it was not possible to place the parties precisely in *statu quo*. At any rate, such is the argument advanced here in support of the judgment, and it is insisted that as defendants had disposed of the property deeded to them by plaintiff, there was no function for a court of equity to perform, as it was impossible, in these circumstances, to reinstate plaintiff to her former position. It is said too that as such conclusively appeared at the trial, the only right which obtained in plaintiff's favor was to recover the $600 and interest from defendants and this is available only in a court of law. If such was the theory of the trial court, it is an erroneous view, for where equity once rightfully obtains jurisdiction, it will retain it to the end of administering such complete relief as may be just in the circumstances of the case. On the facts appearing in the record, it is undoubted that the cancellation sought may not be decreed, for the reason defendants have disposed of the property and the parties may, therefore, not be placed in *statu quo*. But the fact that defendants have

thus placed the property beyond the power of the court affords no reason why plaintiff should be mulcted in the costs and turned away without any relief whatever, if it appears her cause is just. In such circumstances, it is the duty of the court to approximate a just result as nearly as possible and shape its decree accordingly. Besides a prayer for cancellation, the bill contains as well a general prayer for such equitable relief as the circumstances of the case may appear to suggest to be proper. If it appears, as it does, the case is one of equitable congnizance, and the court has rightfully obtained jurisdiction with respect to the subject-matter, it should retain it to give relief approximating justice, as it may. To this end, damages, which are ordinarily recoverable only at law, are frequently given in lieu of equitable relief for the purpose of approximating a just result. [See Holland v. Anderson, 38 Mo. 55, 24 Am. and Eng. Ency. Law (2 Ed.), 616.] And this is true in those cases where the relief as to the cancellation of a contract is denied because it would be inequitable for the reason the parties, through changed conditions, may not be placed in *statu quo*. [24 Am. and Eng. Ency. Law (2 Ed.), 616.]

In good conscience, plaintiff is entitled to recover of all of these defendants $600, the amount Friedmans should have paid on the mortgage for her benefit, together with interest thereon at the rate of six per cent per annum from the date the deeds were exchanged, May 7, 1909. Defendant Graham was the instrument through which plaintiff was defrauded and the right of recovery is as clear against him as it is with respect to the Friedmans. [Judd v. Walker, 215 Mo. 312, 114 S. W. 979; s. c., 114 Mo. App. 128, 89 S. W. 558.] As the case is of equitable cognizance, we are authorized to enter judgment here but it is more convenient for the trial court to execute the process. In view of this fact, the judgment should be reversed and remanded with directions to the trial court to decree a recovery

for plaintiff as above indicated, enter the same accordingly and issue execution thereon. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.