CHARLES D. FLACK et al., Respondents, v. G. A. WAHL, Appellant.

St. Louis Court of Appeals, February 6, 1917.

1. **FRAUD AND DECEIT:** Misrepresentations: Sufficiency of Evidence. In an action for damages sustained by being fraudulently induced to exchange properties, evidence that defendant falsely represented that the property he exchanged was renting for a much larger amount than it really was, that he knew what the property was renting for, and plaintiffs did not, that plaintiffs, who were ignorant and inexperienced in such matters, did not have equal means for obtaining this information, and that defendant's agent, acting within the scope of his authority, prevented a further investigation by them, by falsely representing to them that, at the time they went to view the property, the tenants were asleep and could not be disturbed, *held* sufficient to warrant a finding for plaintiffs.

.2. ——: ——: Negligence as Defense. In an action for fraud, where it appears that plaintiff had the undoubted right to rely

upon defendant's unequivocal statements and that such statements were false, it does not lie in defendant's mouth to say that plaintiff should not have been so negligent or foolish as to believe and rely upon them.

3. **APPELLATE PRACTICE: Abandoned Matters: Review.** Where evidence tending to establish liability on a certain theory is admitted without objection, but the cause is not submitted to the jury upon that theory, the appellate court need not consider whether or not that theory is tenable.

4. ———: **Review: Harmless Error.** In an action for fraud, an instruction which required the jury to find, as a condition precedent to returning a verdict for plaintiffs, that several distinct misrepresentations were made by defendant, was not prejudicially erroneous, although no recovery could be had on one of the misrepresentations thus hypothesized, where the amount of damages returned on account of such misrepresentation was ascertainable from the record and the court required plaintiffs to remit such amount.

5. ———: **Instructions: Submitting Unnecessary Facts: Harmless Error.** An instruction which requires the jury to find all the facts necessary, in order to warrant a verdict for plaintiffs, is not to be condemned because it requires the jury to find additional facts that are not necessary to a recovery.

6. ———: **Admissibility of Evidence: Harmless Error.** In an action for damages sustained by being fraudulently induced to exchange properties, where the deed from defendant to plaintiffs correctly stated the amount of incumbrances on defendant's land, the error, if any, in allowing plaintiffs to testify that the defendant had previously misrepresented that the incumbrances were less than the amount stated in the deed, and that they did not read the deed, was cured by requiring plaintiffs to remit the amount of the added incumbrance.

7. **INSTRUCTIONS: Failure to Submit Defenses.** An instruction for plaintiff purporting to cover the entire case is not erroneous because it fails to submit a matter of defense, where the evidence does not tend to establish such defense.

8. ———: **Measure of Damages: Form.** A complaint, that an instruction on the measure of damages fails to require the jury, in assessing the damages, to make their findings from the evidence, is not tenable, where the instruction repeatedly requires the jury to find matters therein stated "from the evidence," and the jury could not well have done otherwise in assessing the damages.

9. ———: **Refusal: Matters Covered by Other Instructions.** The refusal of an instruction is not error, where the matters covered thereby are fully and properly covered by other instructions given.

10. **FRAUD AND DECEIT: Misrepresentations: Instructions: Burden of Proof.** In an action for damages sustained by being fraudulently

induced to exchange properties, plaintiffs need establish their case only by a preponderance of the evidence, and hence an instruction requiring plaintiff to prove his case beyond a reasonable doubt was properly refused.

11. INSTRUCTIONS: Refusal: Submitting Theory not Warranted by Evidence. An instruction which submits a theory that is not warranted by the evidence is properly refused.

12. PLEADING: Pleading Evidence. It is unnecessary and improper for the plaintiff to plead in his petition the evidence by which he expects to prove the substantive facts necessary to constitute the cause of action asserted. [Sections 1794, 1813 and 1818, R. S. 1909.]

13. FRAUD AND DECEIT: Misrepresentations: Pleading: Evidence: Weakness of Intellect. In an action for damages sustained from fraudulent misrepresentations, evidence that plaintiff was weak-minded and mentally incapable of protecting himself in a business transaction, was admissible, notwithstanding there was no allegation to that effect in the petition, as tending to establish one of the ultimate facts alleged in the petition, namely, that he relied upon the false representations made by defendant; the condition of mental incapacity being merely an evidentiary, and not a constitutive, fact, it was unnecessary, and would have been improper, to plead it. [REYNOLDS, P. J., dissents.]

14. ——: ——: Evidence: Weakness of Intellect. In an action for damages sustained from fraudulent misrepresentations, reliance upon the misrepresentations is a question of fact, to be established, not alone by the party's own assertion, but to be gathered from probative facts and circumstances which shed light upon the matter; and if such party be ignorant, inexperienced or of weak intellect, and hence guileless and readily susceptible to the artful designs of a fraud-feaser, and easily imposed upon, proof thereof is admissible in support of the allegation of reliance, and particularly is this true where the fraud-feaser strongly contends that the other party had full opportunity to investigate, and did investigate, and hence is not in a position to assert that he relied and acted upon the misrepresentations. [REYNOLDS, P. J., dissents.]

15. RESCISSION: Mental Capacity: Pleading. In an action to rescind or avoid a contract on the ground that plaintiff was mentally incompetent to enter into it, the fact of mental incapacity is a constitutive element of the cause of action, and hence it is necessary to allege it.

16. TRIAL PRACTICE: Continuance: Surprise. In an action for damages sustained from fraudulent misrepresentations, defendant was not entitled to a continuance, under Sec. 1846, R. S. 1909, on the ground of surprise, by reason of the fact that evidence was introduced to the effect that plaintiff was weak-minded and men-

tally incapable of protecting himself in a business transaction, when the petition contained no allegation to that effect, since defendant was bound to know that evidence of that character was admissible and might be offered for the purpose of proving one of the ultimate facts alleged in the petition, namely, that plaintiff relied upon the false representations made by defendant. [REYNOLDS, P. J., dissents.]

17. **INSTRUCTIONS: Limiting Instructions.** Where evidence is admissible for a single purpose only, the adverse party is entitled to an instruction limiting its consideration to such purpose.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

AFFIRMED (*upon condition*).

*John Cashman* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained. Before one is entitled to recover in an action of fraud, he must show that false representations were made by defendant; that he knew them to be false when made, or they were made as of his knowledge when he had no such knowledge, and plaintiffs must have relied on the representations as made, and be misled to their detriment. Where, as here, the parties investigate for themselves, with every opportunity to learn all the facts, and even refuse to trust their own agents and secure the services of an expert to see after their interests, there can be no recovery, and neither law nor equity will afford relief. Buford v. Caldwell, 3 Mo. 479; Glasscock v. Minor, 11 Mo. 655; Morse v. Rothbone, 49 Mo. 91; Dunn v. White, 63 Mo. 181; Bradford v. Wright, 145 Mo. App. 623; Mires v. Summerville, 85 Mo. App. 186; Cahn v. Reid, 18 Mo. App. 127; Judd v. Walker, 215 Mo. 337; Bank v. Trust Co., 179 Mo. 649; Clinkenbeard v. Weatherman 157 Mo. 105. (2) It was reversible error to permit plaintiffs to introduce evidence of the alleged mental incapacity of plaintiff Charles D. Flack. There was no such issue submitted by the pleadings. Banking Co. v. Loomis, 140 Mo. App. 62; Caldwell v.

Reed, 198 Mo. 359; Wells v. Mutual Benefit Assn., 126 Mo. 637; Rhoades v. Fuller, 139 Mo. 179; Jamison v. Culligan, 151 Mo. 416; Blunt v. Spatt, 113 Mo. 48; Makenzie v. Donnell, 151 Mo. 431. (3) It was gross error for the court to overrule and disregard defendant's affidavit of surprise upon the court admitting evidence as to the mental incapacity of the plaintiff, Charles D. Flack. There was no such issue made by the pleadings. The court should have compelled plaintiffs to make such amendment to their petition as would authorize this proof and then permit the case either to be continued or postponed, so as to give defendant a fair and reasonable opportunity to obtain proof to overthrow that evidence. Banking Co. v. Loomis, 140 Mo. App. 62; Caldwell v. Reed, 198 Mo. 359; Wells v. Mutual Benefit Assn., 126 Mo. 637; Rhoades v. Fuller, 139 Mo. 179; Jamison v. Culligan, 151 Mo. 416; Blunt v. Spatt, 113 Mo. 48; Makenzie v. Donnell, 151 Mo. 431. (4) The plaintiffs, testifying that they could read and write, and understood the English language well, it was gross error to permit them both to testify that they did not read the deed. There is no pretense that anything was done to prevent them from reading it, and they were represented by an expert real estate man of their own selection in going over the papers at the time the trade was closed. Under such conditions the evidence should have been excluded. Davidson v. Manson, 146 Mo. 619; Hendricks v. Vision, 118 Mo. App. 421; Thompson v. Langan, 154 S. W. 808; Donnelly v. Trust Co., 239 Mo. 388; Anderson v. Drug Co., 149 Mo. App. 573; Bradford v. Wright, 145 Mo. App. 631; Breeders Co. v. Wright, 134 Mo. App. 717. (5) It constituted reversible error to permit plaintiffs to introduce evidence of the value of their farm. This issue was forced into the case by counsel for plaintiffs in his opening statement to the jury. The measure of damages was the difference between the alleged represented value, and alleged and represented income of the cottages and their then true value. Boyd v. Wahl, 175 Mo. App. 181; Adams v. Barber, 157 Mo. App. 370; Boyce v. Gingrich, 154 Mo. App. 198; Warner v. Win-

frey, 142 Mo. App. 298; Hawman v. McLean, 139 Mo. App. 429; Kendrick v. Ryus, 225 Mo. 150. (6) It was error to permit the witness, Kingsland, to testify as to the value of the cottages. It was not based on the sworn evidence testimony of any person nor upon any record or conceded fact, but only upon a verbal opinion of a third person, and as purely hearsay. Landers v. Railroad, 134 Mo. App. 80. (7) It was error to admit the contract in evidence. All matters preceding the execution and delivery of the deed were merged in the deed. Davidson v. Manson, 146 Mo. 619; Hendricks v. Vision, 118 Mo. App. 421. (8) Defendant's instruction No. 1 should have been given. The rule in cases of alleged fraud has always been that if the conduct and dealings of the party charged with fraud comports as well with honest and fair dealing as with dishonest and unfair dealing, then he is not liable; and, further, if from the evidence the jury have reasonable doubt as to the fraud charged, that doubt should be resolved in favor of defendant. Unless the facts are entirely irreconcilable with the hypothesis of honesty and good faith this instruction is always proper. Dallam v. Renshaw, 26 Mo. 544; Reimbolds v. Parr, 51 Mo. 592; Paige v. Dixon, 59 Mo. 47; Chapman v. McIlwrath, 77 Mo. 44; Webb v. Darby, 94 Mo. 621; Robinson v. Dryden, 118 Mo. 534; State ex rel. v. Shelton, 249 Mo. 698; Steinwender v. Creath, 44 Mo. App. 356; Shinnabarger v. Shelton, 41 Mo. App. 148. The court erred in refusing defendant's instructions Nos. 2, 3, 4, 5, 6, 7, 8, 9 and 10. These instructions declared the law as applicable to the facts in this case as defined by the rulings of the appellate courts of this State for half a century. It is not necessary to cite authorities. (9) Plaintiffs' first instruction is fatally defective in two particulars. In that, being one undertaking to cover the whole case. it left out the element of defendant's honest belief in the truth of the things he is charged to have represented to plaintiffs. This instruction, when it comes to the measure of damages, is fatally defective. It does not confine or refer the jury to the evidence in fixing the

market value. They were not directed to find the difference in value as shown by the evidence. Is it necessary to cite authority on this point? Plaintiffs' instruction No. 2 is radically wrong. It assumes that representations were made. The "if any," in the third line of the instruction is destroyed by the word "further" at the end of the fifth line. The word "further" assumes that the jury has already found that representations had been made. The instruction is further defective in that it creates a liability, whether fraudulently or innocently made. And still further, the representations must have been such as to mislead a person of ordinary understanding in exercising ordinary care to protect his own interests. This instruction is wrong clear through. Plaintiffs' instruction No. 3 is bad in that it also disregards defendant's evidence as to his belief in the truth of what he said. (10) There is a misjoinder of parties plaintiff; the suit is upon a joint claim of plaintiffs as joint owners of the land described in the petition. The evidence shows that the land belonged entirely to the plaintiff, Meda S. Flack.

*R. P. & C. B. Williams* for respondents.

(1) In an action for fraud and deceit in inducing a sale or exchange the plaintiff has an election of remedies. He may rescind the contract upon discovery of the fraud and sue to set aside the sale, or he may affirm the contract and sue for damages for the fraud and deceit at any time within the period of the Statute of Limitations. Brown v. Lead & Zinc, Co., 231 Mo. 166; Adams v. Barber, 157 Mo. App. 370; 20 Cyc., p. 94. (2) In an action for fraud and deceit in inducing a contract of exchange of properties, the plaintiff's cause of action is made complete when he proves that the defendant made false representations with knowledge of their falsity, or made the same as of his own knowledge without knowing whether they were true or false, reliance by the plaintiff on the representations, and damages; and the measure of such damages is the difference between the actual and the represented value of

the property received by plaintiff in such exchange. Judd
v. Walker, 215 Mo. 312; Brigham v. Judy, 186 S. W. (Mo.
App.) 15; Adams v. Barber, 157 Mo. App. 370; Kendrick
v. Ryus, 225 Mo. 150; Stonemetz v. Head, 248 Mo. 243;
Howman v. McLean, 139 Mo. App. 429; Boyd v. G. A.
Wahl, 175 Mo. App. 181; Newman v. Friedman, 156 Mo.
App. 142; Boyce v. Gingrich, 198 Mo. App. 154; Zahnder
v. Stark, 248 Mo. 39; Macbeth v. Craddock, 28 Mo. App.
380; Shinnabarger v. Shelton, 41 Mo. App. 147; Cottrill
v. Krum, 100 Mo. 397; Bank v. Richmond, 235 Mo. 543.
(3) The plaintiffs had a right to rely upon the repre-
sentations of the defendant with respect to the amount
of rent that was being received for the property, and the
amount of the mortgages on the same, and were not
required to make any independent investigation. Judd
v. Walker, 215 Mo. 312; Bank v. Richmond, 235 Mo.
543; Cottrill v. Krum, 100 Mo. 397; Adams v. Barber,
157 Mo. App. 370. (4) Evidence that the plaintiff was
weak-minded was admissible for the purpose of showing
plaintiff's susceptibility to the representations made by
the defendant. It was not necessary to plead this fact
but it was admissible under the allegation of reliance.
Bloomer v. Gray, 10 Ind. App. 326, 37 N. E. 819; Porter
v. United Rys. Co., 165 Mo. App. 619; Ingalls v. Miller,
121 Ind. 188; 22 N. E. 995; Gillespie v. Keator, 56 Fed.
203, 5 C. C. A. 474; Neuman v. Friedman, 156 Mo. App.
142; Jacobson v. Whitner, 138 Wis. 434; 20 Cyc., p.
117. (5) The delay on the part of the plaintiffs in
bringing the suit so long as they are within the Statute
of Limitations does not affect their right to recover in
this case; they were not required to complain or make
demand and neither the failure to do which, or the delay,
waived any rights that they had to sue for the fraud.
Brown v. Lead and Zinc Co., 231 Mo. 166; Wagner v.
Herkimer, 167 Mich. 587; 20 Cyc., page 94; Cottrill v.
Krum, 100 Mo. 397. (6) The plaintiffs had a right to
rely upon the representations of the defendant with re-
spect to the amount of the encumbrances on the property
in question, and were not required to examine the records
or make any further investigation. Judd v. Walker, 215

197 Mo.—2

Mo. 312; Devero v. Sparks, 189 Mo. App. 500; Bishop
v. Seal, 87 Mo. App. 256; Palmer v. Welch, 154 S. W.
433; Bailey v. Smock, 61 Mo. 213; Clark v. Edgar, 12
Mo. App. 345. (7) The defendant sought to prove that
the plaintiffs' farm was of no value and he cannot now
complain that the court permitted plaintiffs to offer in
evidence in rebuttal of that offered by the defendant.
Moreover, if evidence of the value of plaintiffs' property
was not admissible, no harm was done by its admission
because the court specifically told the jury in instruction
No. 1, that the measure of damages was the difference
between the actual and the represented value of the cot-
tages received by plaintiffs in the trade. (8) Defen-
dant's instruction No. 8 had no place in the case and
was properly refused. A reading of Mr. Wahl's testi-
mony will show that his defense was not that he made
the representations imputed to him and did so on in-
formation which he honestly believed to be true, but the
defense distinctly was that he did not make the repre-
sentations and that what plaintiffs said was untrue; that
he said nothing whatever to the plaintiffs about what the
property was renting for or what its value was. (9)
Defendant's instruction No. 1 was properly refused,
as all the matters contained in that instruction were
covered in plaintiffs' instruction No. 1, except the last
two paragraphs thereof. The matter contained in the
last paragraph was properly refused because the plain-
tiff in a civil action is only required to prove his case by
a preponderance of the evidence and never beyond all
reasonable doubt. And the paragraph next to the last
in said instruction was given by the court in the in-
structions given of the court's own motion in the exact
language that defendant's counsel wrote it. 38 Cyc.,
p. 1753; Lang v. Martin, 152 Mo. 668. (10) Defendant
says, on page 17 of his brief, ''The court erred in re-
fusing defendant's instructions Nos. 2, 3, 4, 5, 6, 7, 8,
9, 10,'' but does not suggest wherein such instructions
are erroneous. They all show upon their face that they
were properly refused. (11) Under point IX of defend-
ant's brief he contends that plaintiffs' instruction No.

1 is defective on the measure of damages. This instruction, upon this point, is a duplicate of the ones approved in the case of Kendricks v. Ryus, 225 Mo. 157, and Adams v. Barber, 157 Mo. App. 370; besides it will be presumed that the jury made their findings with reference to the market value from the evidence in the case. Phister v. Grove, 48 Mo. App. 455; Milligan v. Chicago, 79 Mo. App. 393; Baker v. Kansas City, 52 Mo. App. 602; Shorff v. Southern, 115 Mo. App. 157; Powers v. Warren, 75 Mo. App. 271. (12) Under point X of defendant's brief, he contends that there was a misjoinder of parties plaintiff; that the suit is upon a joint claim of plaintiffs as joint owners, and the evidence shows that the land belonged entirely to plaintiff, Meda S. Flack. This point was not raised at all in the court below, nor mentioned in the motion for a new trial. The case was tried upon the theory that the cause of action was in plaintiffs jointly as husband and wife. In defendant's answer there appears this admission: "This defendant further answering plaintiffs' petition says, that plaintiffs on and prior to the 2nd day of July, 1908, were the owners of said 29 acres of land in said Madison County, Illinois." Moreover, the evidence shows that the farm was the homestead of plaintiffs and they, with their child, were at the time occupying the same as their homestead. Statutes 1909, sec. 1735. (13) Evidence of the rents received for the cottages a reasonable time before and after the 2nd of July, 1908, was admissible. Hasher v. Kansas City, 60 Mo. 303, Grant v. Hathaway, 118 Mo. App. 604.

ALLEN, J.—This is an action at law for the recovery of damages for fraud alleged to have been perpetrated upon plaintiffs in a real estate transaction involving the exchange of properties. This action was originally instituted against defendant Wahl and one Duncan, the latter a real estate agent; but during the progress of the trial the case was dismissed as to Duncan. The trial, before the court and a jury, resulted in

a verdict and judgment for plaintiffs, and defendant Wahl appealed.

Prior to July 2, 1908, plaintiffs owned a farm, referred to as their homestead, near Godfrey, Madison County, Illinois, consisting of approximately forty acres, upon which was located an eight-room residence and other improvements. The property was free and clear of incumbrance, and, it seems, reasonably worth $6000. Defendant Wahl (to whom we shall refer as "defendant") owned three cottages on Kraft street, in the city of St. Louis, and had placed the same in the hands of a firm of real estate agents, Dougherty & Bush, in the city of St. Louis, for sale. Duncan was in the employ of Dougherty & Bush, or connected with them, as a salesman. It is said that he, acting for Dougherty & Bush, had previously sold a farm near that of plaintiffs' belonging to one Gillinwater, a brother-in-law of plaintiff Charles D. Flack, and that plaintiffs, having thus become acquainted with him, and being desirous of selling their farm, or obtaining income property therefor, placed it in the hands of Dougherty & Bush, who thus became the agents of both plaintiffs and defendant, though it appears that plaintiffs were not aware that these agents represented defendant. Through such agents plaintiffs' farm was brought to the attention of Wahl, who inspected it, and while upon the premises proposed to plaintiffs to exchange his three said cottages therefor. Both of the plaintiffs testified that defendant represented to them that two of these cottages were then renting for $25 per month each, and one for $20 per month, a total of $70 per month; that the three, with the lots upon which they were situated, were covered by first-mortgages thereon amounting in all to only $3050; and that the lots and cottages were valued at and worth in the market $9000, or $5950 over and above the encumbrances thereon. Shortly thereafter plaintiff Charles D. Flack came to the city of St. Louis to inspect the cottages. According to his testimony he was taken out to the cottages by Duncan but did not enter any of them. He says that Duncan told him that

the tenants were people who worked at night and slept during the day, and could not then be disturbed. Plaintiffs both testified that they relied implicitly upon the representations made by defendant and Duncan, and made no investigations other than that above mentioned.

It appears that plaintiffs were inexperienced and ignorant respecting city property, while defendant, it seems, was an experienced dealer in real estate generally.

On July 2, 1908, plaintiffs and defendant entered into a written contract for the exchange of plaintiffs' farm for defendant's cottages. In making the trade the farm was valued at $6000; the "equity" in the cottages was put in at $5000; and defendant was to pay to plaintiffs $1000 in cash. The trade was consummated on this basis; but in paying plaintiffs the cash difference in supposed values defendant deducted $200 or more as commissions for Duncan, or Dougherty & Bush. The written conduct, prepared by Duncan or by some other person connected with Dougherty & Bush, after describing defendant's three houses, referred to them as being "subject to first deeds of trust of $1500 and $1500." Thereafter, on or about July 29, 1908, the deeds were exchanged, and defendant paid plaintiffs the money above mentioned. The deed which plaintiffs received to the cottages was executed by a brother-in-law of defendant, who had held the legal title to the property for defendant. It recited that one cottage was subject to a first deed of trust for $1500, and that each of the other two was subject to a deed of trust for $1550, a total encumbrance of $4600. Such were in fact the first mortgage liens against the property received by plaintiffs. There were also second mortgages, but these were agreed to be released and were released.

In closing the transaction plaintiff Charles D. Flack called in one Tietjens, a real estate dealer, to see that the papers were in proper form. Tietjens did not examine the cottages, or have anything to do with the transaction other than as above mentioned.

The evidence adduced by plaintiff goes to show that the cottages were not renting for $20 and $25 per month, as defendant is said to have represented, but that one was renting for $12 per month, while the other two were vacant, and that the property was found to be worth nothing over and above the mortgages. It appears that shortly after the exchange of properties was consummated plaintiffs went to relatives in Ohio; that Mrs. Flack was sick, and they did not return to St. Louis until June, 1909. In the meantime the cottages, after some considerable delay, it is said, in getting them out of the hands of Dougherty & Bush, were placed by plaintiffs in the hands of another real estate firm for rent. Such rents as were collected, it seems, went to meet interest and expenses, and plaintiffs received no income therefrom. Plaintiffs held the property until on or about May 24, 1910. The notes secured by deeds of trust had become due, and the holder thereof was pressing for payment and about to foreclose; and plaintiff, having been advised that their equity was worthless, conveyed the property by quit-claim deed, to the holder of the deeds of trust.

It is unnecessary to rehearse the details of defendant's evidence. Duncan testified that when he took plaintiff Charles D. Flack to examine the cottages, Flack went through one of them. And he denied that he said or did anything to prevent Flack from making an investigation. Defendant could not recall having made any statements to plaintiffs as to the market value or rents of the cottages. When asked whether he had made any representations as to the rents, he repeatedly replied: "Not that I remember of."

The jury returned a verdict in plaintiffs' favor for $4000. The trial court, in passing upon defendant's motion for a new trial, required plaintiffs to remit $1500 of this verdict, upon the ground that the evidence did not warrant a recovery by plaintiffs for alleged false representations as to the amount of the encumbrance on the cottages received by plaintiffs from defendant. Plaintiffs filed such remittitur, and judgment was en-

tered for $2500. From this judgment the appeal before us is prosecuted.

Such further reference to the proceedings below will be made as may appear necessary to a disposition of the questions raised on appeal.

I. It is earnestly insisted by learned counsel for appellant that the evidence adduced by plaintiffs failed to make a prima-facie case for the jury and that the trial court erred in overruling appellant's demurrer to the evidence. But we regard it as altogether clear that there is no merit in this contention. The main argument advanced in this connection is that plaintiffs had full opportunity to investigate, for themselves, and that plaintiff Charles D. Flack did investigate as far as he chose; and that plaintiffs cannot now be heard to complain that they were deceived. But this argument avails nothing, under the circumstances of the case. We may omit reference to the alleged representations of defendant other than as to rents. The evidence as to the latter, alone, suffices to make the case one for the jury. [See Thaler v. Niedemeyer, 185 Mo. App. 257, 170 S. W. 378, and cases cited.] Defendant knew what the cottages were renting for, and plaintiffs did not. Plaintiffs, who were ignorant and inexperienced in matters of the sort, did not have equal means for obtaining this information; and plaintiffs' evidence makes it appear that Duncan, acting within the scope of his authority as defendant's agent, prevented a further investigation by falsely representing that the tenants slept during the day and could not be disturbed. Furthermore, plaintiffs had the undoubted right to rely upon defendant's unequivocal statements, if made, as to the matter of facts, of this character; and if such statements were false it does not lie in defendant's mouth to say that plaintiffs should not have been so negligent or foolish as to believe and rely upon them. [See Judd v. Walker, 215 Mo. 312, 114 S. W. 979; Stonementz v. Head, 248 Mo. 243, 153 S. W. 108.] Other questions raised in connection with

this assignment of error need not be here discussed. We think that the demurrer was well ruled.

II. There is here no question as to the admissibility of evidence tending to prove that defendant made certain representations as to value. This evidence came in without objection; but the cause was not submitted to the jury upon the theory that defendant could be held liable for such representations, and we need not therefore consider the question whether any liability could thereby be cast upon defendant under the circumstances of the case. [See Stonemetz v. Head, supra.]

III. The cause was submitted to the jury on ten instructions. Four of these were given at paintiffs' request, three at the request of the defendant, and three by the court of its own motion. Ten instructions offered by the defendant were refused. Plaintiffs' first instruction, the main instruction for plaintiffs covering their case, required the jury to find that defendant made false representations both as to rents and as to encumbrances on the property. And it told the jury that if they found the facts therein required to be found then to return a verdict for plaintiffs, and to assess plaintiffs' damages "at the difference between the reasonable market value of the equity, if any, in said cottages at the time of said trade, and the reasonable market value of what the equity in said cottages would have been, if any, if they had been as represented," not exceeding the amount sued for.

In this connection it may be well to say that this instruction, being thus in the conjunctive (requiring the jury to find false representations both as to rents and encumbrances, in order to find for plaintiff), if the issue as to false representations concerning encumbrances should not have been submitted, nevertheless if this was cured by the remittitur, the instruction cannot be said to have been fatally erroneous in submitting such issue, for in this view it merely required the jury to find more than was necessary in order to find for plaintiffs. In-

deed it is not suggested that the instruction is erroneous on this account.

It is argued, however, that the court erred in permitting plaintiffs, over defendant's objections, to testify that they did not read the deed which they received conveying to them the title to defendant's cottages. If this was error we are of the opinion that a proper remittitur would cure it. The evidence indisputably showed, and it was conceded by both parties throughout, that the real encumbrances upon defendant's cottages amounted to $4600. Plaintiffs claimed that defendant had falsely represented that the encumbrances amounted only to $3050. Under the evidence and the instruction, in no event could the jury have allowed plaintiffs more than $1550 on account of false representations as to the encumbrances. The trial court, in passing upon the motion for a new trial, concluded that in view of the fact that plaintiffs accepted a deed which correctly set forth the amount of the encumbrances, which was scrutinized by Tietjens for them, so much of the verdict as could have been predicated upon false representations as to encumbrances should be remitted. Such remittitur, had it been of the proper amount, we think would have cured the error, if any, in admitting the testimony complained of. We believe that the trial court undertook to pursue the proper course, under the circumstances of the case. But the difference between the actual encumbrances and the encumbrances as said to have been represented by defendant was $1550 and not $1500. We consequently hold that in order to sustain the judgment before us on appeal we must, in any event, require the plaintiffs to remit the further sum of $50.

IV. It is argued that plaintiffs' first instruction mentioned above, is fatally defective, in that it purports to cover the entire case while it leaves out "the element of defendant's honest belief in the truth of the things he is charged to have represented to plaintiffs." As to this, it is sufficient to say that the defendant did not testify that he made the representations charged in the

honest belief that they were true, but testified merely that he did not remember making any statements touching the matters alleged to have been misrepresented.

Another complaint as to this instruction is that it does not in terms require the jury, in assessing plaintiffs' damages, to make their findings from the evidence in the case. But it is quite clear that there is no merit in this suggestion. The instruction repeatedly requires the jury to find matters therein stated "from the evidence;" and the jury could not well have done otherwise in assessing the damages.

Certain criticism is made as to the wording of plaintiffs' other instructions. But it is quite apparent that they are free from reversible error.

V. Complaint is made of the refusal of defendant's instruction No. 1, which is quite lengthy and need not be here set out. Its refusal was not error for the reason that all matters sought to be covered thereby were fully and properly covered by other instructions given, with the exception of that contained in the last paragraph thereof. That paragraph sought to have the jury told that if they had a reasonable doubt as to whether defendant or his agent did or did not make false representations to plaintiffs, then the jury should resolve such doubt "in favor of honest and fair dealings on the part of said defendant Wahl and return a verdict for him in regard thereto." It is argued that where the evidence adduced is as consistent with honesty and fair dealing as it is with a fraudulent design the law will presume that the transaction is bona fide and not fraudulent. [See State ex rel. v. Shelton, 249 Mo. 660, 156 S. W. 955.] But this rule does not justify the portion of this refused instruction under consideration. The law cast upon plaintiffs the burden of proving their case by the preponderance of the evidence, but did not require them to prove it beyond a reasonable doubt.

It is argued that the court erred in refusing defendant's instruction No. 8. This instruction proceeded upon the theory that defendant's evidence went to show that any representations made by him were based on

statements made to him by the person from whom he purchased the cottages, and that he believed such statements to be true. We find no support for this theory in the testimony adduced, and for this reason, if none other, the instruction was properly refused.

VI. Defendant complains greatly of the rulings of the trial court in admitting testimony of the witness Gillinwater respecting the mental capacity of plaintiff Charles D. Flack, and in refusing defendant a continuance on the ground of surprise because of the admission of this testimony.

This witness was asked by plaintiffs' counsel whether he knew anything concerning Flack's "capacity, or competency as a man of business." He replied that he did. Defendant's counsel objected on the ground that Flack had "appeared and testified intelligently" and shown that he was "not a person entitled to a guardian and wholly capable of taking care of his affairs." This objection was overruled. Thereupon plaintiffs' counsel (referring to Flack's mental capacity) asked the witness: "What is it?" The witness replied: "He is thoroughly incompetent." Defendant's counsel again objected "on the ground stated in the objection to the former question," which objection was overruled. The witness was then asked to explain what he meant by saying that Flack was incompetent. Defendant's objection to this on the ground that the witness had "not shown himself qualified" was overruled; and in response to an inquiry by the court, the witness stated that he had resided in the same house with Flack for many years. Being again asked to explain, the witness said: "The various foolish transactions he has made in business, and various other acts in his life that showed thorough and entire incompetence of intelligent action." Defendant's counsel moved to strike this out as being "wholly incompetent and highly prejudicial to the defendants." This motion was overruled. The court then proceeded to question the witness as to the period of time during which the latter observed Flack; where-

upon defendant's counsel further objected to all of this' testimony on the ground that the petition contained no allegation as to the lack of mental capacity on the part of Flack. After argument of counsel, this was overruled. Defendant also filed an affidavit of surprise and prayed for a continuance, but this prayer was denied.

On cross-examination of this witness, he was asked by defendant's counsel: "You have never had Mr. Flack examined for insanity, have you?" To which he replied: "Most certainly not."

We have deemed it advisable to thus set out, as briefly as possible, what occurred below. The only question before us in this connection is whether testimony of this character is admissible at all, in the absence of an allegation in the petition to the effect that plaintiff Charles D. Flack was weak-minded or mentally incapable of protecting himself in a business transaction. If the testimony of this witness is objectionable as being conclusions rather than statements of fact, that question is not here. It is insistently urged that the trial court erred in overruling defendant's objections based upon the ground that no issue of this character was made by the pleadings, and in refusing defendant a continuance upon the ground of surprise.

From the record before us it appears that the trial court ruled as it did upon the theory that this testimony was admissible under the allegation of the petition that plaintiffs *relied upon* the alleged false representations of defendant, believing them to be true, and were thereby induced to enter into the contract in question and consummate the same. A consideration of this assignment of error has led us to the conclusion that this view is sound. It was, of course, unnecessary for plaintiffs to plead anything respecting the mental capacity of plaintiff Charles D. Flack as an essential element of their action for fraud. The petition alleges all of the substantive facts constituting the cause of action sued upon. Among these is the necessary averment that plaintiffs relied upon the representations alleged to have been made to them. It was essential that plain-

tiffs sustain this averment by proof; and it would seem that it was proper to receive for this purpose any evidence having any probative force and effect—and not otherwise inadmissible—which tended to support such averments. An allegation that Flack was weak-minded would seem to have no proper place in this petition. The Code requires a plain and concise statement of the facts constituting the cause of action (Sec. 1794, Rev. Stat. 1909); and provides that only the substantive facts necessary to constitute the cause of action shall be stated (Sec. 1813, Rev. Stat. 1909); and provides further that a party shall not be required to. state evidence in his pleading or to disclose therein the means by which he intends to prove his case. (Sec. 1818, Rev. Stat. 1909). Here, the substantive facts to be alleged are, that defendant made certain specified false representations of material facts, in connection with an exchange of properties; that defendant knew such representations to be false, or made them of his own knowledge when he had no knowledge as to their truth or falsity; that they were made with the intent and purpose that they be acted upon by plaintiffs, and that plaintiffs did rely and act thereupon to their damage. All of these substantive facts were properly alleged. It would have been unnecessary and improper to plead the evidence by which plaintiffs expected to prove such substantive facts. The fact that Charles D. Flack was weak-minded, if true, was not one of the substantive facts constituting the cause of action, and hence was not alleged. Were the action one to rescind the contract on the ground that Flack was mentally incapable of contracting, the question would be quite a different one. But in the instant case it seems quite clear that the question is not whether plaintiffs should have pleaded this matter, but whether evidence of this character is admissible at all in an action of this precise character. It was not admissible for any purpose except to prove that the representations were relied upon. In such cases reliance is a question of fact, to be established not alone by a party's own assertion but to be gathered from probative facts and

circumstances which cast light upon the matter. And if the party alleging fraud be ignorant, inexperienced or of weak intellect, and hence guileless and readily susceptible to the artful designs of a fraud-feaser, and easily imposed upon, proof thereof ought to be held admissible in support of the allegations of reliance. Particularly is this true here, we think, since defendant strongly contended and sought to make it appear that plaintiffs had full opportunity to investigate, and did investigate, and are not in a position to assert that they relied and acted upon the representations alleged.

In a leading encyclopedic compendium of our law the rule concerning this matter is thus stated:

"Evidence is admissible of any facts tending to show reasons for reliance upon defendant's representation—as that the discovery of the true condition of things was difficult, that the relations of the parties were of a confidential nature, that plaintiff was ignorant of the matters to which the representations related, while defendant was familiar with them, or *that plaintiff was of weak intellect and easily imposed upon.*" [See 20 Cyc, 117.] (Italics ours.)

In Bloomer v. Gray, 10 Ind. 326, cited in support of the italicized portion of the text above quoted, the action was one for fraud and deceit. A witness was permitted to state that the plaintiff was weak-minded at the time of the transaction in question. As to the propriety of admitting this testimony, the appellate court said:

"We fully concur in the statement of counsel for the appellant, that the *gravamen* of the action is not to recover on account of the weak-mindedness of the appellee, but we cannot for that reason say that this evidence was not competent; on the contrary, we think it was proper for the purpose of showing his susceptibility to the representations of the decedent. The representations made, if false, would have created a liability against the decedent, whether the appellee was weak-minded or not, and to show that he was weak-minded did not increase the liability or entitle him to a recovery

which otherwise he did not have. The fraud consisted in misleading the appellee and then taking advantage of him after he had been thus deceived. Any fact which tends to throw light on the manner in which the artifice was perpetrated is proper. True, the wrong done was no greater on account of appellee's weak mental condition, yet he was probably more susceptible to the wiles and cunning of the artful than if his mental faculties were strong and unimpaired. The jury were to determine the question of fraud from all the facts and circumstances, hence were entitled to know not only what the representations were which the decedent made, but what the probable effect of the same was upon the mind of the appellee, and what influence, if any, they had upon his making the trade."

It is true that in that case the petition alleged that certain false representations were made to plaintiff "who was weak-minded." But these words, thus thrown into a petition charging actual fraud, did not, in our opinion affect the question of the admissibility of the testimony mentioned. And it appears from the quotation above that the court so considered the matter, and placed its ruling upon the ground that the testimony was admissible under the allegation of reliance.

In Cummings v. Thompson, 18 Minn. 246, a similar question was considered. The action was upon a promissory note and the defense was one of fraud in obtaining the note, without consideration, perpetrated by the payee through a false reading thereof to defendant. It was not alleged that the defendant was unable to read. A portion of the opinion is as follows:

"We are also of opinion that under the allegation that the defendant relied upon and believed the false reading and misrepresentations of the contract by Ensign, and was misled thereby, it was competent for the defendant to prove the facts offered to be proved relating to his inability to read. The averment that the defendant relied on, and believed the reading of the contract, and the representations of its contents by Ensign, is an allegation of fact, and essential to constitute a

fraud. . . . And it would seem to be apparent, that the evidence offered of the inability of the defendant to read, in connection with the facts that he executed the contract without reading it, or further inquiry, would tend directly to show that in thus executing the instrument he did *in fact* rely upon and was misled by Ensign's reading and misrepresentations of it. The defendant's inability to read is, therefore, merely a specific fact which goes to support the general allegations in the pleadings, and need not be specially stated."

These authorities we regard as here in point and strongly persuasive in support of respondents' position. We are referred to no case in this State directly in point. A multitude of our cases might be cited in support of the general principles which we have attempted to state and apply above, but it is unnecessary to encumber the opinion with such citations.

Flack had not been adjudged insane nor "examined for insanity." The testimony of his brother-in-law, Gillinwater, though couched in strong terms, when considered with all of the other evidence in the case, must be taken to indicate merely a weakness of intellect on the part of Flack rendering him an easy victim in the hands of a shrewd and designing trader. Flack acted for himself and his wife in making such investigation as was made, and his lack of intelligence or acuteness, and his consequent gullibility, was a factor of no little importance under the circumstances of the case. It was, however, a specific probative fact tending to establish the ultimate fact alleged, viz., that he relied upon the representations made. [In this connection, see, also, Jacobson v. Whiteley, 38 Wis. 1. c. 437.]

Appellant places much reliance upon the opinion of this court in Hill-Dodge Banking Co. v. Loomis, 140 Mo. App. 62, 119 S. W. 967. But that case did not deal with the question here presented. The question decided was that, under a general denial, or a plea of *non est factum,* it could not be shown in defense to an action on a promissory note that at the date of the execution thereof the mind of the maker was so weakened by

disease that he was unable to transact business or comprehend the nature of a business transaction. The principles and reasoning upon which that opinion is based afford no support, we think, to appellant's position that it was here necessary to plead mental infirmity on the part of Flack in order to render admissible the testimony complained of.

In Feeney v. Howard, 79 Cal. 525, the necessity of pleading the existence of a fiduciary relation, under the circumstances of the case, was involved. The suit was one to declare a trust, based upon the breach of a parol agreement to reconvey land. No actual fraud was alleged or proved. It was sought, however, to make out a case of constructive fraud by proof of the existence of a fiduciary relation between the parties. But the existence of such relation had not been alleged. The court, in part, said:

"It is true that it was held in Brison v. Brison, 75 Calif. 525, that if by means of a parol promise to reconvey a party obtains a deed without consideration from one to whom he stands in a fiduciary relation, the violation of the promise is constructive fraud, although at the time of the promise there was no intention not to perform. . . . But it is essential to the operation of this principle that there be a fiduciary relation. It is one of the facts constituting the fraud. The facts constituting fraud must be averred in cases of constructive as well as of actual fraud. [Golson v. Dunlap, 73 Cal. 164.] And in this case no fiduciary relation is averred."

Where no actual fraud is charged, and the case must proceed, if at all, upon the theory of constructive fraud arising by virtue of the existence of a fiduciary relation, the existence of such relation then becomes a constituent element of plaintiffs' case—one of the substantive facts which he must plead. On the other hand, where actual fraud is alleged, it is held that confidential relations existing between the parties may be shown, though not specifically pleaded, in support of the allegation that the plaintiff relied upon the representations

197 M. A.—3

charged to have been made. [See Glaspie v. Keator, 56 Fed. 203; 20 Cyc. 117.]

And in like manner if plaintiffs were here seeking to rescind or avoid the contract on the ground that Flack was mentally incompetent to contract, it would be essential to allege this fact which would then become a constituent element of the cause of action. But since the action is for actual fraud alleged, mental infirmity need not be pleaded; though evidence thereof was, we think, admissible upon the ground and for the purpose above mentioned.

Appellant insists that the court committed reversible error in overruling the application for a continuance on the ground of surprise. But from the views expressed above it necessarily follows that the defendant could not properly claim surprise on the ground of the admission of testimony of this character. Because of the nature of the action, defendant, we think, was bound to know that the susceptibility of plaintiff Charles D. Flack to representations of the character in question was a matter drawn in issue by the pleadings as they stood. We cannot well hold that the trial court should have found that defendant was actually misled to his prejudice. [Sec. 1846, Rev. Stat. 1909.] In this connection we may incidentally state that the court, in entering the order passing upon the motion for a new trial, among other things, recites that the appearance and conduct of Flack on the stand indicated that he was weak-minded. But irrespective of this—and without giving any weight thereto—we are of the opinion that no reversible error was committed in denying the continuance.

In our opinion the position which defendant took below and has taken here regarding the admission of testimony of the character in question, under the pleadings as they stood, is not tenable. Defendant, however, would have been entitled to an instruction, had one been offered, instructing the jury to the effect that this testimony could be considered only for the purpose of de-

termining the issue as to whether plaintiffs relied upon the representations, if made.

Other questions touched upon in the briefs are not controlling and need not be discussed. The judgment appears to be for the right party, and we perceive no prejudicial error in the record other than that relating to the amount of the remittitur ordered. If plaintiffs, therefore, will, within ten days, remit the further sum of $50, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. It is so ordered. *Becker, J.,* concurs; *Reynolds, P. J.,* dissents in a separate opinion filed.

## DISSENTING OPINION.

REYNOLDS, P. J.—I am unable to concur in the result arrived at by my learned associates in affirming the judgment of the circuit court, even after a remittitur is ordered by our court. I think the judgment should be reversed and the cause remanded.

The petition avers an agreement in writing to enter upon the exchange of the property of plaintiffs for that of defendant. It is averred that the representations made by defendant to secure the exchange were false, and what are claimed to have been the real facts being set up, it is averred that defendant knew at the time these representations were made, that they were false and untrue, he however making them as of his own knowledge, while in fact he had no knowledge whatever on the subject; and that they were made with the intent and purpose on the part of defendant to deceive and defraud plaintiffs and to induce plaintiffs to. part with the title and possession of their farm and homestead without any consideration therefor. It is averred "that plaintiffs were ignorant of the truth of the said representations, and they *relied upon the same* (italics ours), believing them to be true, and were induced thereby to enter into said contract and to part with the title and possession of their said farm." Further averring that plaintiffs, after they deeded their farm in con-

sequence of the false and fraudulent representations, discovered that they were false and untrue, and setting out again the falsity of the representations and that plaintiffs had not seen the city property and knew nothing of its condition, location or value, except what was told them by the defendant, damages are claimed in the sum of the difference between the value of the lots according to the representations of defendant and the actual value of the lots, to-wit, the sum of $5950.

The answer of the defendant Wahl, admitting that plaintiffs are husband and wife and that he entered into the agreement in writing with plaintiff for the exchange of the property, denies all fraudulent transactions on his part or any misrepresentation. This is done at great length, unnecessary to here repeat. There was a motion made to strike out part of the answer, which was sustained, defendant excepting. Plaintiffs replied at length to the new matter remaining and the cause went to trial before the court and a jury.

During the progress of the trial a witness, brother-in-law to the plaintiffs, having married a sister of plaintiff Charles D. Flack, being examined as a witness on the part of the plaintiffs was asked by counsel for plaintiffs if he knew anything about the capacity or competency as a business man of Charles D. Flack. He answered that he did. This line of testimony was objected to on the ground that the plaintiff had appeared and testified intelligently and shown that he was not a person entitled to a guardian and was entirely capable of taking care of his affairs. The objection was overruled, defendant excepting. The question was then asked of this witness, what that was, that is, what was the capacity or competency of plaintiff Charles D. Flack as a man of business. Witness answered, he "was thoroughly incompetent." This was objected to on the ground stated in the former objection and that was overruled. He was then asked by plaintiffs' counsel to state what he (witness) meant by saying Flack was incompetent. This was objected to and the objection overruled, defendant excepting. The witness was then asked by the

court as to how long he had known Flack, and he stated that he had lived in the same house with him for years and visited with him continually. He was asked again by counsel for plaintiffs what he meant by saying that Flack was incompetent, and the witness answered that he meant by that the various foolish transactions he had made in business, and various other acts in his life, showed thorough and entire incompetence for intelligent action. Counsel for defendant moved to strike this out as wholly incompetent and highly prejudicial to the defendant. This was overruled, defendant excepting. Witness was then asked how long Flack had been that way. The court asked if that question was directed to a period in 1908 and not to the present time. Counsel for plaintiff said, "Yes," and the witness answered that he had been in that condition during the entire acquaintance of witness with him and longer. The court asked the witness if he knew that, and the witness answered that he did know it positively; that he knew that from what his own father and sister had stated. Whereupon counsel for defendant made the further objection to this evidence that there were no allegations in the petition that Charles D. Flack was incompetent to take care of himself; that they were not called on to meet an issue of that kind in the case without notice. Whereupon they offered an affidavit of surprise and application for postponement or continuance. After some discussion, the court took the matter under advisement. The application was then renewed in somewhat different form, verified by defendant, and was to the effect that defendant had been misled to his prejudice in maintaining his defense upon the merits of the case as the issues are shown to be made up by the pleadings, in this, that there are no averments in the petition to the effect that plaintiff Charles D. Flack was mentally incapacitated to any extent whatever at the time the trade or exchange of the property mentioned in the pleadings was negotiated and the contract signed and the deeds exchanged, and affiant had no intimation or knowledge from any source that plaintiff would undertake to prove at the

trial that Flack was mentally incapacitated; that plaintiff Charles D. Flack appeared as a witness and testified in his own behalf and on behalf of his co-plaintiff, his wife, and that the latter appeared and testified and other of his acquaintances appeared and testified, all without any mention or intimation that Charles D. Flack was mentally incapable or otherwise disqualified or incapacitated from protecting his own interests in the trade; that no intimation having been made that the mental capacity or incapacity of Flack was challenged until near the completion of the taking of the testimony of the last witness for plaintiff, defendant had no previous knowledge that any such evidence would be offered; that that evidence being irrelevant and incompetent under the pleadings, and defendant having no knowledge or information or intimation that proof of the character so admitted by the court would be offered under the pleadings, defendant had made no preparation to try the case upon the theory that Flack was in any way mentally incapacitated to negotiate and carry on the trade for himself and his wife, and defendant had not prepared to try the case on any such issue and had no witnesses in attendance by whose testimony, since that testimony concerning the mental capacity of Flack had been given, he could meet it, and no opportunity to prepare to meet and could not meet this issue or theory at that time; that if the cause is continued to another term or postponed to some reasonably future time, he could produce competent testimony to prove and will prove that Charles D. Flack was not, at the time of negotiating the exchange of properties, or of the signing of the contract therefor, or of the execution or exchange of the deeds completing the exchange or properties, or at any other time prior to or since that date, to any extent or degree, mentally incapacitated from fully understanding every part and feature of the exchange of property and of fully protecting his own interests in regard thereto, and that to permit such evidence to be introduced in the state of the pleadings was unfair to defendant, in giving plaintiff an undue and unfair advantage before the jury

in the trial of the case. Whereupon defendant prayed the court to compel plaintiff either to amend his petition to conform to the proof which he has made or proposes to make in regard to the mental incapacity of Flack in the particulars mentioned, and that the case be continued or postponed until some other time, to give defendant a reasonable and fair opportunity to prepare to meet the averments whch plaintiff may make in his petition under the order of the court, regarding the mental incapacity of plaintiff Charles D. Flack. This was overruled, defendant excepting.

The trial being concluded and the jury instructed, a verdict was returned in favor of plaintiffs in the sum of $4000. Filing a motion for new trial, which, among other grounds, assigned error in permitting plaintiff to introduce and give to the jury the testimony showing or tending to show the mental incapacity of plaintiff Charles D. Flack, and in overruling and disregarding defendant's affidavit of surprise and application for postponement or continuance, the court overruled the motion conditionally that defendant remit $1500 of his judgment. Remittitur being filed, the motion was overruled, defendant excepting and duly appealing from the judgment which was entered on the remittitur.

The learned trial judge filed a memorandum in writing of his reasons for overruling the motions for new trial, which is set out in full in the abstract as in the bill of exceptions. The matter in this memorandum which obviously refers to this part of the motion and to the admission of this testimony is this:

"True, this plaintiff was shown to be weak-minded, and his appearance and conduct on the stand so indicated, but unquestionably he had sufficient comprehension to understand and appreciate the difference between three deeds of trust, one for $1500 and two for $1500 each, and two deeds of trust, one for $1500 and one for $1550."

I still think, as our court held in the opinion first filed herein, that it was error to admit this testimony as to the mental capacity of plaintiff, under the plead-

ings as they then stood, and certainly, admitting it, to refuse defendant an opportunity to meet it, as he offered to do, if he could. There is no allegation whatever in the petition which by any possible intendment or construction can be held to tender an issue involving the mental capacity or incapacity of plaintiff Charles D. Flack.

We have set out verbatim the allegation of the petition containing the words depended upon for the introduction of this testimony, and here repeat them, namely: That plaintiffs "relied upon the same," that is the representations made by defendant as to the value of his St. Louis property.

It is argued by counsel, and so the majority of our court now holds, that it was not necessary, to constitute a good petition here, that any averment of the mental weakness of plaintiff Charles D. Flack should have been made. Admit that. But how does that justify letting in proof of mental weakness when no such averment was made. The learned trial judge, in overruling the motion for a new trial, says that plaintiff "was shown to be weak-minded, and his appearance and conduct on the stand so indicated, but unquestionably he had sufficient comprehension to understand and appreciate the difference," etc. So it is evident that the learned trial judge was influenced to some extent, at least, by this testimony, aided, too, by his estimate of Flack's mentality by his appearance and conduct. But who can say that the jury was not largely influenced by the testimony as to that mental weakness! An ordinary jury, even a very exceptional one, will hardly be as competent as a learned trial judge to determine a man's mentality by his mere appearance and conduct on the witness stand and under fire of cross-examination. But with evidence admitted, as here, on that, and that practically *ex parte* evidence, the jury were bound to be greatly influenced in favor of this plaintiff. I think its admission extremely harmful and prejudicial.

It is true that our code of pleading requires constitutive facts to be set out in a pleading, and enacts that

evidence by which those facts are to be proved are not to be pleaded. If the plaintiffs in this case sought to avoid the contract, the negotiation for which seems to have been carried on by the plaintiff Charles D. Flack, husband of his co-plaintiff, we think it is beyond question that it should, by a proper averment in the petition, have been set up as one of the grounds for avoiding the contract. This would not be pleading evidence but a very material fact showing liability to imposition.

Counsel for respondents, claiming that it was admissible "under the allegation of reliance," cite in support of the ruling of the learned trial court in admitting the evidence as to the mental incapacity of plaintiff Flack, and in overruling the application of defendant of surprise, these cases: Bloomer v. Gray, 10 Ind. App. 326; Porter v. United Rys. Co., 165 Mo. App. 619, 148 S. W. 162; Ingalls v. Miller, 121 Ind. 188; Glaspie v. Keator, 56 Fed. 203; Neuman v. Friedman, 156 Mo. App. 142, 136 S. W. 251; Jacobsen v. Whitely, 138 Wis. 434; 20 Cyc., p. 117, and cases there cited.

It is true that in 20 Cyc., p. 117, subdivision E, it is said: "Evidence is admissible of any facts tending to show reasons for reliance upon defendant's representations, . . . or that plaintiff was of weak intellect and easily imposed upon." The only authority cited in support of this latter claim is the case of Bloomer v. Gray, 10 Ind. App. 326. We do not think that that case sustains the text. It appears on page 327 of the report that it was alleged in the complaint "that the decedent —intending to cheat and defraud the plaintiff, who was *weak-minded,* and in order to induce him to execute to decedent a deed for his lands—falsely and fraudulently represented to plaintiff," etc. It is true that in the course of the opinion it is said (l. c. 330) that the court fully concurs in the statement of counsel for the appellant, "that the gravamen of the action is not to recover on account of the weak-mindedness of the appellant, but we cannot for that reason say that this evidence was not competent; on the contrary, we think it was proper for the purpose of showing his susceptibility to the

representations of the decedent.'' That statement of the court must be read in connection with the petition which was before it and in which the weak-minded condition of plaintiff is averred in the complaint.

In Ingalls v. Miller, 121 Ind. 188, also cited by the same learned counsel, it distinctively appears that it was averred in the complaint ''that by reason of the mental and physical infirmity of the plaintiff, he was induced to believe the false representations so made,'' and to pay the defendants the sum specified. By this allegation in the complaint, as it is called under the Indiana practice, undoubtedly this evidence was admissible.

In neither Glaspie v. Keator, 56 Fed. 203 nor Jacobsen v. Whitely, 138 Wis. 434, was any question of pleading passed upon.

In Neuman v. Friedman, 156 Mo. App. 142, 136 S. W. 251, it is said (l. c. 150) that it could not be successfully claimed that plaintiff forfeited any rights as to the actual fraud perpetrated through lack of diligence, and that this was especially true in view of the fact that plaintiff was old and unlearned in the English language, had devoted her life to truck gardening, was not accustomed to business transactions, and had no means of knowledge at hand when she signed the contract, which was presented to her by the agent, without reading it. By an examination of our own files, it appears that the petition distinctly averred these facts as grounds showing the success of the imposition practiced upon the plaintiff there.

In Porter v. United Rys. Co., 165 Mo. App. 619, 148 S. W. 162, as appears by the abstract of the proceedings at the trial was specifically called to the attention of the trial court when this question was before it, our court comments on evidence introduced tending to show the lack of mental capacity on the part of plaintiff, who was attempting to avoid a release which it was claimed she had signed. The opinion is silent as to the pleadings in the case, but on an examination of our files it appears that in the reply which plaintiff filed in avoidance

of the release, her lack of mental capacity was distinctly set out.

We do not think that any of these cases sustains the contention of learned counsel for the respondents. There is much very correctly said in all of them about the bearing on the question of fraud of a condition of mind tending to show the susceptibility of the party claimed to have been defrauded. But in all of them, so far as appears, there was either a distinct averment of mental infirmity, or the matter of pleading was not under discussion or in decision.

In volume 12, Ruling Case Law, treating of the pleading necessary in actions of fraud and deceit, it is said, section 164, p. 416:

"Ordinarily, fraud must be alleged not only specially but specifically. It is not sufficient to allege fraud in general terms, such as allegation being considered to be of a mere conclusion which the pleader is not permitted to draw, but which, so far as concerns the pleading, is a matter for the court to determine from the facts alleged. This is true whether actual or constructive fraud is relied on." So it is held in Parker v. Moulton, 114 Mass. 99.

In section 166, R. C. L., it is further said:

"In order properly to plead fraud, a bill, complaint, or answer must contain averments of all the elements thereof. Thus, it must show that the representation made the basis of the charge of fraud was made by the defendant, or with his authority, that it related to a material fact, that it was false, that it was made under such circumstances that the person to whom it was made had a right to rely on it, and that he did in fact rely on it, and that he was damaged in consequence. . . . If the pleader relies on fiduciary relations as one of the elements of fraud, he should allege it."

Feeney v. Howard, 79 Cal. 525, is cited for this last proposition. This is a case that goes very fully into the reason of the rule. In Neuman v. Friedman, supra, fiduciary relations and dual agency were relied upon.

That being the rule as to fiduciary relations, it would seem to be equally applicable when mental incapacity is intended to be relied upon as entering into the question of imposition and fraud; that is, this is a fact which must be specifically pleaded.

In section 168, R. C. L., it is said:

"It has been held that where the representations are not in themselves actionable, and the fact that the plaintiff was fraudulently induced to forego making inquiries which he would have otherwise made is relied on as a distinct ground of action, the means by which he was induced to forbear inquiry must be specifically set forth, and that it is not sufficient to charge in general terms that the plaintiff was fraudulently prevented by the defendant's artifice from making inquiry; . . ."

It is to be gathered from the reasoning of the text in Ruling Case Law, supra, that a matter of the kind here under consideration, that is, mental infirmity or incapability of the plaintiffs, or one of them who was the actor in the transaction, could only be given in evidence if mental incapacity was distinctly alleged, or that such averments were made from which could be drawn the inference that the lack of mental capacity was relied upon.

That we understand to be the holding of our court in Hill-Dodge Banking Co. v. Loomis, 140 Mo. App. 62, 119 S. W. 967. That was a case of a claim presented in the probate court and founded upon notes said to have been executed by two parties. The statement presented to the probate court appears to be in the ordinary form in such an action, it being alleged that one of the makers of the notes, against whose estate the demand was presented, had died intestate and the defendant appointed administrator of his estate. The demand was in two counts and recited these two notes. Along with the claim was the usual affidavit of non-indebtedness to the estate by the holder of the notes. There was an answer filed by the administrator denying generally each and every allegation of the petition, as it was call-

Flack v. Wahl.

ed, and all knowledge and information thereof sufficient to form a belief and calling for full proof. It appears that at the trial, on appeal to the circuit court, the administrator, under this general denial, offered evidence tending to prove that the mind of Loomis at the date of the execution of the notes was so weak that he was incapable of comprehending the nature of any business transaction. All of this evidence was excluded by the trial court, on the ground that a general denial did not admit of the testimony. The same theory of the defense was projected in the instructions asked but refused. At the close of the evidence the trial court directed a verdict for plaintiff and defendant appealed. Discussing the action of the court in excluding this testimony, in an elaborate examination, comparison and analysis of the authorities, our court, through Judge GOODE, held that this evidence was properly excluded. Cavender v. Waddingham, 2 Mo. App. 511, an action where the defense to the contract declared on was mental incapacity from drunkenness, and in which it was held that this could be introduced under the general issue, is commented upon. Our court, in Hill-Dodge Banking Co. v. Loomis, supra, overruled Cavender v. Waddingham, supra, on the ground that under a general denial or plea of *non est factum* only those defenses were admissible which went to show that the execution of the instrument was absolutely void in law, as for example that the alleged obligor or covenantor was a married woman or a lunatic. But, says Judge GOODE (l. c. 69) and referring to Stephens, Pleadings (Andrews Ed., 1894, sec. 113 and citations), "the same treatise says in the same connection, 'but if the defendant's case consists of anything but a denial of the execution of the deed, or some fact impeaching the validity of its execution, the plea will be improper. . . . Matters which make the deed validable and not absolutely void—such as duress—must be specially pleaded and cannot be given in evidence under *non est factum.'"

In the consideration of this part of the case Judge GOODE, noting the difference between our Code and the common law, concludes (l. c. 73):

"The law is clear that the note in suit was not void from the first as against Harvey Loomis, even if the latter was laboring under such mental infirmity as disqualified him to contract, but was, at most, only voidable upon proper terms; and we hold this defense was not available to the administrator under a general denial."

We think that our Supreme Court in Wells v. Mutual Benefit Ass'n, 126 Mo. 630, l. c. 637, 29 S. W. 607, and in Chadwell v. Reed, 198 Mo. 359, 95 S. W. 227, has adopted the same view. In the latter case it is said that the burden of proving unsoundness of mind and incapacity of a grantor at the time of the execution of a voluntary deed to his wife rests upon the party seeking to have the deed set aside; the party claiming under a deed is not bound to prove the sanity of the maker, the presumption being that all men are sane. Necessarily, there must be apt averments to let in this proof.

My conclusion in the case at bar is that failing to allege the incapacity or mental weakness of Charles D. Flack, the evidence which was admitted to prove that was improperly admitted and that the objection to it should have been sustained. I do not think that evidence properly admissible "under the allegation of reliance." It follows that the trial of the case should have been postponed, or the cause continued.

For the error in the admission of the testimony mentioned and in refusing a continuance, I think that the judgment of the circuit court should be reversed and the cause remanded.